**Howard NORTON, Plaintiff,**

**v.**

**TOWN OF ISLIP, et al., Defendants.**

**No. CV 98–06745(NGG).**

United States District Court,
E.D. New York.

Jan. 2, 2003.

Thomas L. Costa, Melville, NY, for Plaintiff.

Robert M. Calica, Edward M. Ross, Rosenberg Calica & Birney LLP, Garden City, NY, for Defendant.

## MEMORANDUM AND ORDER

GARAUFIS, United States District Judge.

Plaintiff Howard Norton brings this action under 42 U.S.C. § 1983, alleging that the above-captioned Defendants violated his due process rights when they revoked his right to maintain a legal nonconforming use of his property without notice and an opportunity to be heard. The parties have filed cross motions for summary judgment. For purposes of efficiency, I consider these motions together.

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise noted. Plaintiff is the owner of a house (the "Premises") in Central Islip which was converted by previous owners into a twofamily dwelling in 1933.

(Memorandum of Law In Support of Plaintiff's Motion for Summary Judgment ("Pl. Mem."), at 2.) At the time the original improvements were made, the two-family use was maintainable as a matter of right under the laws of the Town of Islip (the "Town"). (Id. at 3.) Sometime after 1933, the Town adopted an ordinance that zoned the Premises in an area restricted to single-family detached dwellings. (Id.) However, it also issued a letter on April 27, 1965, recognizing the two-family dwelling as a legal non-conforming use.[1] (Id.)

On November 21, 1986, Plaintiff purchased the Premises in reliance upon a certificate of occupancy ("C/O") in the Town's records that certified the Premises as a legal nonconforming two-family dwelling.[2] (Id. at 4.) After the purchase, a Town official advised Plaintiff that he needed to obtain a rental permit in order to rent the Premises. (Id. at 4–5.)

On March 23, 1988, Plaintiff submitted an application to the Town for a rental permit. (Pl. Mem., at 5.) In response, the Town issued a barrage of contradictory signals regarding Plaintiff's nonconforming use. On April 13, 1988, the Town issued a new C/O certifying the Premises' status as a legal nonconforming two-family dwelling.[3] (Declaration of Thomas Costa in Support of Plaintiff's Motion for Summary Judgment ("Costa Decl."), Ex. G.) However, the Town denied the application for a rental permit and also sent a brief letter dated May 14, 1988 to Plaintiff informing

---

1. Under Chapter 68 of the Code of the Town of Islip (the "Town Code"), the Town must, subject to a few provisos, recognize the legality of "any nonconforming use which, at the time such was commenced, was maintainable as a matter of right under the statutes, ordinances and general rules of law then in effect in the Town of Islip." See § 68–14.

2. Although the parties dispute whether Plaintiff reasonably relied upon the C/O on file in

1986, this issue is not essential to the court's determination in this case.

3. Prior to issuance, a C/O will generally be kept on file in an unsigned form, and only upon a request for a certified copy, will a clerk sign and issue it. The Building Department "issues" a C/O any time an individual requests a certified copy.

him that the Town "had studied your file and has determined that you must go before the Board of Appeals, with regard to your non-conforming use. I suggest you file an application at the Permit counter at the earliest possible date." (Declaration of Timothy Shea in Support of Defendants' Motion for Summary Judgment ("Shea Decl."), Ex. K.) Following the issuance of that letter, the Town again issued at Plaintiff's request two C/O's on May 23, 1988 and October 28, 1988, certifying the Premises as a legal nonconforming two-family dwelling. (Pl. Mem., at 5.) Each C/O stated:

This certifies that the above property contains the following improvements which conform substantially with the terms and requirements of the New York State Building Code and the Town of Islip Zoning Ordinance at the time of construction and that the Premises may be occupied for the purpose as stated: Two Family Dwelling (nonconforming use).... (Shea Decl., Ex. W.)

Each C/O also carried a notation at the bottom providing:

This certificate will be null and void if the improvements are altered in any manner or additions are made thereto without authorization from the Town of Islip Division of Building. (*Id.*)

Although it appears that the Town had doubts about the continuing validity of Plaintiff's nonconforming use, it is clear that the Town took no official action to revoke the nonconforming use status. Nor did Plaintiff initiate any proceedings with the Board of Appeals. Instead, Plaintiff commenced in September 1988 an Article 78 proceeding seeking to compel the Town to issue a rental permit. (*Id.*) During these proceedings, the Town justified its denial of Plaintiff's rental application on the ground, among others, that the Premises had lost its status as a nonconforming

use after a fire damaged the home in 1984 and prompted the previous owners to leave it vacant for over a year. As a basis for this argument, the Town cited § 68–15 of the Town Code, which provides:

Discontinuance of any non-conforming use for a period one (1) year or more terminates such non-conforming use of a structure or premises, and thereafter said structure or premises shall not be used, except in conformity with provisions of this ordinance.

In making this argument, the Town acknowledged that it had not officially revoked Plaintiff's nonconforming use and that the validity of the use still needed to be determined by the Town's Zoning Board of Appeals. (*Id.*) The Supreme Court of New York denied Plaintiff's Article 78 petition, but offered no opinion as to the status of the Premises' legal nonconforming use. (Shea Decl., Ex. S.) Months later, on January 3, 1990, the Town again issued at Plaintiff's request a C/O certifying the Premises' established status as a legal nonconforming two-family dwelling. (Pl. Mem., at 4.)

During the period between 1989 and 1997, the Town never initiated any administrative proceeding before the Zoning Board of Appeals or commenced any other proceeding to terminate the nonconforming use. Nor did the Town ever formally notify Plaintiff that his property's legal nonconforming use had been terminated. Indeed, up to the present time, the Premises continues to be annually assessed and taxed by the Town as a legal two-family residence. (*Id.*)

On March 20, 1997, seven years after the conclusion of the Article 78 proceeding, the Town served Plaintiff with an Accusatory Instrument charging him with violating § 68–40 of the Town Code, which states "No occupancy or use shall be made of land or a building that is not consistent

with the last-issued certificate of occupancy for such building or use of land unless a permit is secured." (*Id.* at 6–7.)[4]

During discovery for the criminal proceeding, Plaintiff requested the last-issued C/O, and in response the Town's Director of Building and Housing issued a new C/O for the Premises dated October 21, 1997 that included the following revoking notations:

> * Fire to Structure 26 Mar 84 Premises Vacated Repaired Fr Damage Permit Required Prior to Reoccupancy
> * Rental permit for two-family DENIED 23 Mar 88 Non-conforming use of two-family lost due to non-use in excess of one consecutive year and failure to apply for repair permits. Denial sustained by the SCS court 27 Feb 89. Withdrawal from Court of Appeals 23 Mar 90.

(*Id.* at 7.)

Plaintiff later learned during discovery in this § 1983 action that the Town's Commissioner of Building and Engineering added the above determinations to Plaintiff's 1990 C/O shortly after that C/O was issued. The notations were made without giving Plaintiff notice or an opportunity be heard.

Plaintiff filed this § 1983 action in October, 1998, seeking (1) monetary damages, (2) attorneys fees, (3) a declaratory judgment recognizing the 1990 C/O as the last validly issued C/O for his premises and declaring that the Town's criminal prosecution of Plaintiff is unconstitutional, and (4) an injunction against Town officials from taking further action to punish or prohibit Plaintiff from using the Premises as a two-family dwelling. (Pl.Compl., ¶ 49.) In October 2000, Plaintiff and the Town entered into a stipulation withdrawing Plaintiff's claim for monetary damages. The stipulation was made on condition that the Town delay the criminal proceedings against Plaintiff pending resolution of his constitutional claims. (Costa Decl., Ex. BB, 87–91.) To date, the Town has consented to a succession of adjournments of the criminal action.

## DISCUSSION

In their cross motions for summary judgment, the parties dispute whether the Town violated Plaintiff's procedural and substantive due process rights when it revoked Plaintiff's nonconforming use without notice and a hearing. For the reasons set out below, I grant Plaintiff's motion for summary judgment with regard to his procedural due process claim, and dismiss Plaintiff's substantive due process claim.

### I. Standard of Review

A grant of summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir.2001).

---

4. The Town's criminal proceeding, brought in the name of the People of the Sate of New York, was filed in the Suffolk County District Court.

## II. Ripeness

■ On November 8, 1999, Judge Seybert, to whom this case was previously assigned, ruled that Plaintiff's procedural due process claim was ripe for review. However, Judge Seybert made no ruling as to whether Plaintiff's substantive due process claim was properly before the court. Although the Defense has not raised this issue in its motion for summary judgment, I consider it *sua sponte* and find that Plaintiff's substantive due process claim is not ripe for review.

To meet the ripeness requirement, a plaintiff alleging that the state has deprived him or her of property in violation of his or her substantive due process rights must show that (1) a state regulatory entity has rendered a "final decision" on the matter, and (2) the plaintiff has sought just compensation by means of an available state procedure. *Dougherty v. Town of North Hempstead Board of Zoning Appeals*, 282 F.3d 83, 89 (2d Cir.2002). In *Dougherty*, plaintiff brought substantive and procedural due process challenges to the defendant town's revocation of his alteration permit. Citing *Williamson Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the court held that the state regulatory entity had not rendered a "final decision" on the matter since the plaintiff had failed to apply for a variance. It therefore dismissed plaintiff's claim as unripe. *See also, Weissman v. Fruchtman*, 658 F.Supp. 547 (S.D.N.Y.1987).

In the case at bar, Plaintiff has similarly failed to obtain a final decision regarding his nonconforming use from the Town's Zoning Board of Appeals. I therefore find that his substantive due process claim is not properly before the court.

■ A finding that a substantive due process claim is unripe may render a related procedural due process claim unripe as well. See *Dougherty*, at 88–89 (dismissing plaintiff's procedural due process claim because it was incidental to the unripe substantive claim.) However, unlike the plaintiff in *Dougherty*, the Plaintiff in this case requests relief that is grounded almost entirely on his procedural due process claim. Plaintiff does not seek to compel issuance of a C/O which might still be issued by a Zoning Board of Appeals, but merely requests that the court invalidate a C/O that has already been issued in violation of his procedural due process rights. Because the gravamen of Plaintiff's complaint lies with the procedural due process claim, I find that the procedural claim is ripe for review.

## III. Procedural Due Process Claim

To establish a violation of his procedural due process rights, Plaintiff must show that (1) he possessed a protected property interest as defined by state law; (2) he was deprived of that interest under color of law; and (3) this deprivation occurred without due process of law. *See Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1064 (2nd Cir.1989). Defendants assert that Plaintiff has satisfied none of these three requirements. In particular, the Defense argues (1) that Plaintiff's nonconforming use terminated by operation of law well before the Town issued the 1997 C/O, and that the Town therefore never took any affirmative action revoking Plaintiff's property interest, (2) that Plaintiff was not entitled to predeprivation due process, (3) that Plaintiff received predeprivation due process, (4) that Plaintiff's assertion of his Fifth Amendment privilege against self-incrimination precludes summary judgment against the Town, and (5) that the court should abstain from adjudicating this action. I address these arguments in turn.

### A. Constitutionally Protected Property Interest

■ In New York, it is well established that a nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right entitled to constitutional protection. *See Town of Somers v. Camarco,* 308 N.Y. 537, 541 127 N.E.2d 327 (N.Y.1955); *Keller v. Haller,* 226 A.D.2d 639, 641 N.Y.S.2d 380 (2d Dept. 1996).

In the case at bar, it is undisputed that the Plaintiff's two-family home constituted a legal nonconforming use prior to a fire that damaged the Premises in 1984. Two issues, however, do remain contested. I first consider whether the Town's decision to issue a new C/O in 1997 constituted a revocation of Plaintiff's nonconforming use, or merely reflected that the nonconforming use was terminated by operation of law after allegedly being abandoned.

Section 68–15 of the Town Code provides:

"Discontinuance of any non-conforming use for a period one (1) year or more terminates such non-conforming use of a structure or premises, and thereafter said structure or premises shall not be used, except in conformity with provisions of this ordinance."

The Defense claims that Plaintiff's nonconforming use terminated by operation of § 68–15 as soon as the Premises was allegedly left vacant for a period of one year after the 1984 fire. Defendants further assert that the Town in 1997 revoked no interest belonging to the Plaintiff because Plaintiff had no interest left to revoke.

The problems with Defendants' argument are numerous. First, the court does not read § 68–15 to provide that nonconforming uses terminate by operation of law

without any official determination of abandonment. Rather, § 68–15 merely provides that abandonment constitutes "just cause" for terminating a nonconforming use. This interpretation is buttressed by § 68–20 of the Town Code, which provides:

[u]pon confirmation by the Board of any legal nonconforming use, a Building Inspector or other persons charged with the issuance of certificates of occupancy and/or certificates of compliance shall issue said document with an endorsement specifying the legal nonconforming use, and said document *shall constitute presumptive use* in any action or proceeding brought under this ordinance. (Italics added.)

Under § 68–20, the issuance of a C/O recognizing a nonconforming use raises a presumption that a premises is being used as a nonconforming use. Thus, for the Town to terminate Plaintiff's nonconforming use under § 68–15, it must first overcome the presumption established under § 68–20.

Moreover, even if the ordinance were somewhat ambiguous in this regard, the court would be loath to interpret the Town Code as providing such an ephemeral property right, both because zoning restrictions affecting nonconforming uses are to be strictly construed in favor of the property owner, *See Stephentown Concerned Citizens v. Herrick,* 246 A.D.2d 166, 676 N.Y.S.2d 246 (3d Dept.1998), and because such an interpretation might render the Town Code unconstitutional. *See I.N.S. v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (If an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, court is obligated to construe the statute to

avoid such problems.)[5]

I also note that Defendants have provided no legal support for the proposition that the property right here in question, one which vested as a result of the issuance of an official Town permit and which has been relied on by the owner in expending significant investments, may terminate by operation of law, without any affirmative act by the Town. The criminal cases cited by Defendants are inapposite as they all involve an alleged nonconforming use that had never been established and/or recognized by the municipality. *People v. Sudierfi Realty Corp.,* 101 N.Y.S.2d 792 (Sp. Sess.1951); *City of New Rochelle, on Complaint of Dassler v. Dandry,* 191 Misc. 977, 79 N.Y.S.2d 126 (City Ct.1948); *People, on Complaint of Kelly v. Sheil,* 26 N.Y.S.2d 188 (N.Y. Mag.Ct. 1941); *People, Complaint of Lewis v. Kollender,* 169 Misc. 995, 10 N.Y.S.2d 252 (Co.Ct., Nassau County 1939). Accordingly, I find that the Town's issuance of the 1997 C/O constituted an affirmative act revoking Plaintiff's property right in his nonconforming use.

The second issue before the court concerns the requirements of Plaintiff's prima facie case. It is well established that Plaintiff must show he possessed a property right that was terminated by the Town. However, the parties disagree as to whether Plaintiff must prove that his nonconforming use was not abandoned after the 1984 fire, or alternatively, whether it is sufficient to prove that the nonconforming use existed prior to the events that led to the Town's finding of abandonment.

Defendants correctly state that Plaintiff carries the burden of proving that he held the nonconforming use when it was re-voked in 1997. However, except for this simple point of law, the Town's argument is devoid of merit. The Town states that its decision to terminate Plaintiff's nonconforming use was based upon a determination that Plaintiff's premises was left vacant for a period in excess of one year. It further contends that this determination of abandonment is not subject to the strictures of due process because a determination of abandonment means that Plaintiff no longer possesses a property right that is protected by the Due Process Clause. Using this tautology, the Town could deny due process to any land owner with impunity so long as it could later prove that the factual determinations it made were correct. Indeed, the Town's papers appear to argue that the harmless error doctrine may be used as a shield against procedural due process claims challenging the state's deprivation of property rights. This argument completely misconstrues the spirit of the Due Process Clause, which creates an independent right to notice and a hearing in the context of state deprivations of property rights without respect to the underlying merits of a case. *See Farrar v. Hobby,* 506 U.S. 103, 112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) ("The awarding of nominal damages for the 'absolute' right to procedural due process 'recognizes the importance to organized society that [this] righ[t] be scrupulously observed' while 'remain [ing] true to the principle that substantial damages should be awarded only to compensate actual injury.' . . . Thus, *Carey,* obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury.") (quoting and citing *Carey v. Pi-*

---

**5.** In this latter respect, the court notes that vested property rights that have been officially recognized by the state and reasonably relied on by the owner are not metaphysical entities that exist independent of legal determinations by the state. Rather, they are recognized and revoked by the state. A statute that provides otherwise in order to circumvent the strictures of the Due Process Clause would raise serious constitutional concerns.

*phus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978); *Westborough Mall, Inc. v. City of Cape Girardeau, Mo.,* 794 F.2d 330, 339 (8th Cir.1986) (rejecting notion that the deprivation of procedural due process rights is not in itself injury without more and stating "a plaintiff whose constitutional rights have been violated is entitled to a finding of liability and nominal damages even if no compensatory damages are shown."); *Matter of Boomgarden,* 780 F.2d 657 (7th Cir.1985) ("[i]n bankruptcy proceedings, both debtors and creditors have a constitutional right to be heard on their claims, and "the denial of that right to them [is] the denial of due process which is never harmless error."); *Stone v. F.D.I.C.,* 179 F.3d 1368, 1376–1377 Fed.Cir. (1999) (finding in context of employee termination hearing that ex parte communications made with official presiding over hearing violates employee's right to procedural due process without respect to merits of the case.); *Silva v. Sanford,* 1998 WL 205326 (S.D.N.Y.1998) (plaintiff still entitled to nominal damages for procedural due process violation even if it was harmless with regard to underlying decision.). *See also, Ryder v. United States,* 218 Ct.Cl. 289, 585 F.2d 482, 488 (1978) (refusing to apply harmless error test: "[W]here a serious procedural curtailment mars an adverse personnel action which deprives the employee of pay, the court has regularly taken the position that the defect divests the removal (or demotion) of legality, leaving the employee on the rolls of the employing agency and entitled to his pay until proper procedural steps are taken toward removing or disciplining him. In that situation, the merits of the adverse action are wholly disregarded.").

The Town does not dispute that Plaintiff held a property right in his nonconforming use prior to the event that formed the basis of its determination to terminate the nonconforming use. Accordingly, I find Plaintiff has proven that he possessed a property right in his nonconforming use and that the Town revoked this property right when it issued a new C/O for the Premises in 1997.

## B. Defendants' Obligation To Provide Predeprivation Due Process

■ Defendants claim that the availability of post-deprivation judicial review in the state courts bars a procedural due process claim. However, the Defense fails to explain the basis for this conclusory statement and instead curtly refers the court to *Brady v. Town of Colchester,* 863 F.2d 205 (2d Cir.1988), which involves the application of the inapposite *Parratt/Hudson* rule regarding "random and unauthorized" conduct. As the court can find no conceivable basis for the Defense's application of *Brady,* it prefers to rely on case law which does provide Plaintiff with the right to predeprivation due process.

Under *Mathews v. Eldridge,* the court weighs three factors to determine what procedural protections the Constitution requires in a particular case: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Applying this test, courts have usually held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property. In *Zinermon v. Burch,* 494 U.S. 113, 132, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), the Court

held: "In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking ... Conversely, in situations where a pre-deprivation hearing is unduly burdensome in proportion to the liberty interest at stake ... or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." (citations omitted). *See also, Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455 (C.A.D.C.1997) (holding that District violated plaintiff's procedural due process rights when it summarily suspended plaintiff's building permit.)

Applying the *Mathews* factors to the case at bar, I find that the Town did owe Plaintiff predeprivation notice and an opportunity to be heard. First, Plaintiff has a significant property interest in using his premises as a two-family dwelling. Second, the Town's decision to revoke Plaintiff's permit is fraught with at least some risk of erroneous deprivation. According to the C/O issued in 1997, the primary reason for revoking Plaintiff's nonconforming use arose from the Town's conclusion that the nonconforming use had been abandoned for a period in excess of one year. (Costa Decl., Ex. FF.) Plaintiff has provided evidence that the nonconforming use was not abandoned for over a period of one year, and he should have been able to present this evidence to the Town prior to revocation of his property interest. The 1997 C/O also states that his nonconforming use was revoked because Plaintiff "failed to apply for repair permits." (*Id.*) The meaning of this statement remains unclear to the court, but it appears to be incidental to the abandonment claim. Even if it were not, Plaintiff may have been able to convince the Town that he

had good cause for failing to apply for the repair permits or that he in fact had applied for them. Finally, I disagree with the Town that the requirements of due process, minimal as they are, would be unduly burdensome. In this respect, I note that a full-fledged predeprivation evidentiary hearing would probably be unnecessary for purposes of satisfying the Town's due process obligations. I also note that § 68–20 of the Town Code already requires the Town to hold a hearing prior to approving new nonconforming use applications. It is simply not credible that the Town can hold these preapproval hearings for unestablished nonconforming uses, but cannot hold a hearing prior to terminating a vested property right that has already been officially recognized. Accordingly, I find that the Due Process Clause did require the Town to provide Plaintiff with notice and an opportunity to be heard prior to terminating his nonconforming use.

### C. Defendants Failed To Provide Predeprivation Due Process

The Town further contends that it provided Plaintiff with notice and an opportunity to be heard prior to terminating his nonconforming use. The Town asserts that "[t]he record establishes that a prior notice requirement is unnecessary in general because the property owner is already aware prior to the time a notation is placed on his C/O either (1) that the Town has previously denied him a permit on the basis that the non-conforming use has been lost or (2) that the property has sustained substantial fire damage resulting in a loss of the use." (Def. Mem., at 12.)

These facts, even if taken as true, do not support Defendants' contention that it comported with the requirements of due process. For even if Plaintiff knew that the Town recognized the flaws in his entitlement to a nonconforming use, such knowledge does not put Plaintiff on notice

that the Town was preparing to undertake an official action to revoke his property right. The same logic holds true as to Plaintiff's personal knowledge of the 1984 fire. However, in this regard, I add that Plaintiff's knowledge of the fire is irrelevant since the 1997 C/O did not cite the fire as a basis for terminating his nonconforming use.

### D. Statute of Limitations

■ Defendants urge the court to deny Plaintiff's motion for summary judgment because a disputed issue of material fact remains as to whether Plaintiff's suit is time barred. Like Defendants' previous arguments, this argument rests on the mistaken assumption that Plaintiff suffered an injury during the 1980s. This is clearly not the case. Rather, Plaintiff's injury-the termination of his nonconforming use, occurred when the Town officially revoked his nonconforming use by issuing a C/O to that effect in 1997. Plaintiff filed this suit in 1998, well within the applicable statute of limitations.[6]

### E. Fifth Amendment

■ Defendants argue that summary judgment in favor of the Plaintiff is inappropriate because Plaintiff asserted his Fifth Amendment privilege against self-incrimination in response to several questions at his deposition. In particular,

Plaintiff refused to answer questions as to (1) whether he rented the Premises prior to 1990, (2) whether he altered the Premises prior to 1990, (3) whether he had knowledge that his premises had lost its nonconforming use prior to 1990, and (4) whether he had knowledge that his premises had been vacant for more than one year following a fire in 1984. (Shea Decl., Ex. I [Norton Dep. 67, 69, 137, 149, 150, 153].) Plaintiff refused to answer these questions both on grounds of relevancy and privilege. (Id.)

I find that Plaintiff's assertion of his Fifth Amendment privilege did not "substitute for evidence that would assist the Town in meeting its burden of production." See U.S. v. Rylander, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). The questions Plaintiff refused to answer were irrelevant to the issue of whether Plaintiff's property enjoyed an officially recognized nonconforming use prior to 1984, whether the Town revoked this interest prior to 1997, and whether the 1997 revocation comported with the requirements of due process. Plaintiff's assertion of his Fifth Amendment right therefore does not prejudice his motion for summary judgment.

### F. Younger Abstention

■ Defendants argue that the doctrine of abstention articulated in Younger

---

**6.** The statute of limitations analysis might be different if Plaintiff's nonconforming use had been terminated by the addition of the "revoking notations" to his 1990 C/O. However, in this respect, the Town itself argues that the addition of the revoking notations to Plaintiff's 1990 C/O did not terminate Plaintiff's nonconforming use. Rim Giedraitis, who was commissioner of the Town's building department between 1990 and 2000, testified at his deposition that the notations merely refer prospective home buyers to statements concerning the nonconforming use made in the state court opinion dismissing Plaintiff's Article 78 proceeding. (Shea Decl., Ex. G at 77.)

Describing the notations, Giedraitis testified: "It simply states ....that there is a court decision regarding this property that affects the use of the property for two family." Giedraitis also stated that the Town's manual, titled "Procedure for Issuing Certificate of Occupancy," requires that the building director sign a C/O before it may be issued. According to Giedraitis, the 1990 C/O that included the revoking notations remained on file in an unsigned form until 1997. As a consequence, the revoking notations did not carry any legal effect until they became part of a C/O that was signed and formally issued. (Id.)

*v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), compels the court to dismiss Plaintiff's action because it arises out of the same facts and circumstances now the subject of a state criminal proceeding. In his response, Plaintiff contends that *Younger* and its progeny do not bar federal courts from adjudicating cases where, as here, the state defendant has consented to the adjournment of state criminal proceedings pending resolution of a related civil action in federal court.[7]

The Supreme Court held in *Younger* that a federal court, in the absence of extraordinary circumstances, must not interfere with a pending state criminal prosecution. *See Id.* at 46, 91 S.Ct. 746. This rule is the necessary corollary to a system "in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44. *Younger* thus expresses equitable principles of comity and federalism that are "designed to allow the State an opportunity to set its own house in order when a federal issue is already before a state tribunal." *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 479–80, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977) (internal quotations omitted).

*Younger* does not, however, establish an inflexible rule of abstention. Rather, in *Hodory,* the Court stated: "It may not be argued ... that a federal court is compelled to abstain in every such situation. If the State voluntarily chooses to submit to a federal forum, principles of comity do not. demand that the federal court force the case back into the State's own system." *Hodory,* 431 U.S. at 480, 97 S.Ct. 1898. Although the state defendant in *Hodory* expressly waived its abstention claim, the Court's decision is equally applicable where a state defendant by its consistent conduct over an extended period implicitly indicates a willingness to submit to a federal forum.

In the case at bar, I find that the Town has indicated a willingness to submit to a federal forum. For five years, the Town of Islip has delayed prosecution of the criminal proceeding against Plaintiff with the apparent intention of allowing this court to first rule on Plaintiff's constitutional claims.[8] (Costa Decl., Ex. BB, 87–91.) On October 26, 2000, the Town even agreed to make the indefinite adjournment of the criminal proceedings a predicate to Plaintiff's stipulation to withdraw his claims for monetary damages in this action. Now, after failing to raise the issue of abstention in its motion to dismiss, its answer and its motion for summary judgment, the Town urges the court to stay its hand while the Suffolk County District Court proceeds with the five-year old crim-

---

**7.** Plaintiff also urges the court to disregard Defendants' abstention argument because Defendants failed to raise the issue in its motion to dismiss, answer and summary judgment motion. However, Defendants' failure to raise this claim at an earlier juncture does not relieve the court of its obligation to raise this prudential doctrine *sua sponte.*

**8.** The Town now asserts that it has delayed the criminal case to allow Plaintiff "to avail himself of his right to challenge any adverse determination concerning the status of his

property before the Town's Zoning Board of Appeals." (Letter of December 20, 2002, at 3.) However, Plaintiff has from the beginning steadfastly refused to appeal this matter to the Zoning Board of Appeals and has instead made it clear that he prefers resolution of this matter in the federal courts. As such, I find that the Town's decision to indefinitely adjourn the criminal proceeding was made with full knowledge that Plaintiff sought the adjournments in order to permit this court to rule on his constitutional claims.

inal action against Plaintiff. This eleventh-hour request strikes the court as a dilatory tactic intended to further prolong a course of litigation that has needlessly consumed a vast amount of resources—all because the Town has been unable to afford Plaintiff the most rudimentary elements of due process.

In light of the facts set out above, I find that the Town voluntarily chose to submit to a federal forum when it agreed to adjourn the criminal proceeding against Plaintiff until resolution of his § 1983 action. I further find that the Town has waived its right to withdraw its consent to federal adjudication, since its dilatory manner in raising its abstention claim has prejudiced Plaintiff and undermined the efficiency of this court. In this respect, I note that the Town's original decision to adjourn the criminal proceedings reasonably led Plaintiff and the court to expend substantial resources in relation to Plaintiff's § 1983 action. The Town's newly sprung opposition to federal adjudication betrays an indifference to federal proceedings that runs counter to the principles of comity—principles which demand mutual respect between state and federal governments, and which do not compel federal courts to defer to litigation strategies pursued by state defendants in bad faith. I therefore decline to dismiss this case under the doctrine of abstention.[9]

## IV. Conclusion

Having found that the Town did violate Plaintiff's right to procedural due process, I hereby ORDER an award of attorneys fees to the Plaintiff as the prevailing party pursuant to § 1988, Title 42 of the United States Code. I further GRANT Plaintiff's application for a declaratory judgment recognizing that the 1990 C/O was the last validly issued C/O for his premises and that the Premises will continue to enjoy its status as a nonconforming use until the Town revokes this status in a manner conforming with the requirements of due process. Plaintiff's application for a permanent injunction against the Town from taking any action to punish or prohibit Plaintiff from using the Premises as a two-family dwelling is DENIED. Plaintiff's substantive due process claim is DISMISSED on ripeness grounds. Defendants' motion for summary judgment is DENIED.

SO ORDERED.

**9.** I recognize that the Court of Appeals for the Seventh Circuit has established a stricter doctrine of waiver than the one I adopt here. In *Barichello v. McDonald,* 98 F.3d 948 (7th Cir.1996), the Seventh Circuit interpreted Supreme Court's decision in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), to mean that a state may waive abstention only where it expressly urges a federal court to address the merits of a claim. I respectfully disagree with this interpretation of *Dayton,* and find that the Supreme Court's decision does not establish the inflexible waiver rule suggested by the Seventh Circuit. The issue in *Dayton* was whether a state defendant's stipulation to federal court jurisdiction constituted waiver of the state's abstention claim. The Court in *Dayton* first clarified that abstention "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." (*Id.* at 626). Having made this distinction, the Court then held that the state defendant's stipulation regarding jurisdiction did not amount to a waiver of rights under the principles of comity and abstention. *See Id.* Finally, the Court justified this decision by distinguishing the case from *Hodory* and *Brown,* stating "[in *Hodory* and *Brown,*] the State expressly urged this Court or the District Court to proceed to an adjudication of the constitutional merits. We think there was no similar consent or waiver here ..."