THE CATHEDRAL CHURCH OF THE INTERCESSOR; the Most Reverend Craig W. Bates; the Very Reverend David B. Klampert; Reverend Joseph Ciccarello; and Edward Korycka, Plaintiffs,

v.

THE INCORPORATED VILLAGE OF MALVERNE; the Board of Trustees of the Village of Malverne; the Architectural Review Board of the Village of Malverne; the Zoning Board of Appeals of the Village of Malverne; Robert L. Solarino, individually and as Superintendent of the Building Department of the Village of Malverne; Paul Barroca, individually and as interim Superintendent of the Building Department of the Village of Malverne; James Callahan, III, individually and as Trustee and as a member of the Architectural Review Board of the Village of Malverne; and Sidney B. Browne & Son, LLP, individually in its corporate capacity and as the engineer of the Village of Malverne, Defendants.

No. CV 02–2989 TCP MO.

United States District Court, E.D. New York.

Jan. 25, 2005.

Patrick Michael McKenna, McKenna & Schneier, Valley Stream, NY, for Plaintiffs.

Anthony B. Corleto, Corleto & Associates, P.C., White Plains, NY, for Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Before this Court are two motions: (i) Defendants Village of Malvrerne et al. move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint-in its entirety for certain Defendants and partially for other Defendants-for failure to state a claim, and (ii) Plaintiffs Cathedral Church et al. move pursuant to Fed.R.Civ.P. 56(c) for partial summary judgment. Oral argument was heard on November 5, 2004. For reasons enumerated in this opinion, the Defendants' motion to dismiss is **GRANTED**. The claims are dismissed without prejudice and with leave to replead within twenty (20) days of this order. Plaintiffs' motion for partial summary judgment is **DENIED**.

### *BACKGROUND*

#### A. The Parties

The suit is brought by the Cathedral Church of the Intercessor (the "Church"); the Most Reverend Craig W. Bates, the Bishop and Senior Pastor of the Church ("Bishop Bates"); the Very Reverend David B. Klampert, the Dean and Associate Pastor of the Church ("Rev.Klampert"); Reverend Joseph Ciccarello, the Pastor and Worship Leader at the Church ("Rev.Ciccarello"); and Edward Korycka, an active member of the Church ("Korycka"), (collectively "Plaintiffs").

"The Church" is a not-for-profit religious corporation duly organized under the laws of the State of New York. The original structure of the Church was built in and around 1935. The Church occupies a corner parcel of land in a designated Residential B Zone on the Village of Mal-

verne's Official Zoning Map. The Church is currently the seat of the Northeast Diocese of the Charismatic Episcopal Church.

The Defendants in this case are: the Incorporated Village of Malverne ("the Village"); the Board of Trustees of the Village of Malverne ("the Board of Trustees"); the Architectural Review Board of the Village of Malverne ("ARB"); the Zoning Board of Appeals of the Village of Malverne ("ZBA"); Robert L. Solarino, Superintendent of the Village Building Department ("Solarino"); Paul Barroca, Interim Superintendent of the Village Building Department ("Barroca"); Joseph J. Hennessy, Trustee and member of the ARB ("Hennessy"): James J. Callahan, III, Trustee and member of the ARB ("Callahan"), (collectively "Defendants").

The Board of Trustees is the legislative and governing body of the Village and consists of the Mayor and four (4) Village Trustees. The ARB is an administrative board created by the Board of Trustees pursuant to local law. The ARB members consist of the Mayor and four (4) Village trustees sitting in an administrative capacity to regulate the design and exterior appearance of buildings in residential and business districts in the Village. The ZBA is an administrative board authorized by N.Y. Village Law § 7–712. The ZBA consists of five (5) members appointed by the Board of Trustees to hear and decide appeals from any order, decision, ordinance, or local law adopted pursuant to Article 7 of the N.Y. Village Law. The ZBA hears appeals from the ARB decisions.

**B. Events leading up to this lawsuit**

As a result of significant growth, the Church decided to expand its facilities in and around the early part of 1998. On May 16, 1998, the Church submitted plans to the Village for a 5,700 square foot expansion which included, *inter alia,* plans to increase its sanctuary and build out administrative offices ("1998 Proposal"). The Village Building Department ("Building Department") referred the application to the ARB, pursuant to Village Code 6–12.4 [Local Law 1–1975]. On June 19, 1998, the ARB held a hearing on the Church's application. There was considerable community and village opposition to the project. One member of the ARB is alleged to have publicly told the Church that "it was too big and it should move to another community." (Am.Compl.¶ 28)

Plaintiffs allege that the ARB failed to take any action with regards to the Church's application, in violation of 6–12.6 of Local Law 1–175, which mandates that the ARB must approve or disapprove any application within thirty (30) days of the date of referral. (Am.Compl.¶ 29) Defendants contend the Church withdrew its original application. Plaintiffs skirt the issue of whether they withdrew the application, and instead state that as a consequence of the ARB and Village's reaction to their 1998 proposal, the Church "determined that it would give further consideration to the 1998 proposal." (Pl.'s Mem. Sum. J. at 4).

On April 28, 1999, the Church submitted a new plan for a 2,275 square foot expansion ("1999 Proposal"). On May 19, 1999, the Building Department denied the application as a "business use . . . not permitted in a Residential B Zone." (Am.Compl.¶ 32) The Church contends this denial of its building permit was frivolous and made in bad faith, given that: (1) the purported "business use" basis for the permit denial was never asserted against the much more expansive 1998 application, and (2) the Village Zoning Code expressly permits "religious use" and any "accessory use on the same lot with and customarily incidental to [the religious use]." (Am.Compl.¶ 32) Following the Building Department's determi-

nation that the Church's plans constituted a "business use," Plaintiffs allege the Village refused to respond to at least six (6) written inquiries from the Church as to why the business classification had been decided upon.

On or about September 21, 1999, the Church resubmitted its application for a building permit and "demanded the Village abandon its assertion that the expansion was a 'business use' and approve the issuance of the building permit." (Am. Compl.¶ 38) The Building Department forwarded the application to the ARB though Plaintiffs contend the delay in the referral was a violation of § 6–12.6 of Local Law 1–175. On October 21, 1999, the ARB convened to consider the Church's application, but the ARB adjourned without hearing the Church's presentation, claiming it did not know whether it had jurisdiction over the application. The Church claims this adjournment occurred in bad faith.

On or about October 26, 1999, the Village Attorney by letter informed the Church that he and the Board of Trustees had determined that the Church's expansion was a business use and the Church must obtain a variance from the ZBA. (Am.Compl.¶ 42) Plaintiffs claim that determination was wrongly made by the Board of Trustees and the Village Attorney, when it should have been made by the ARB.

On November 30, 1999, the ZBA conducted a plenary hearing which the Church attended "under protest." (Am. Compl.¶ 44) The ZBA reserved decision on the issue. By letter, dated January 31, 2000, the Village zoning attorney served on the Church a copy of the ZBA decision, which overruled the Building Department's determination that the project was a "business use," denied the permit for off-site parking, and required the Church to provide seven off-street parking spaces to alleviate street congestion.

On February 8, 2000, the Church resubmitted revised plans in accordance with the ZBA's ruling. On March 16, 2000, after referral from the ZBA, the ARB conducted a public hearing on the Church's application attended by Church representatives and members of the community. Plaintiffs contend "the ARB abdicated its responsibility by insisting that the Church engage in dialogue with its neighbors and make any changes that the neighbors deemed necessary. The Church refused." (Am.Compl.¶ 48) The meeting was adjourned without resolution. Plaintiffs claim the adjournment was led by Defendants Callahan and Hennessy, both of whom are Trustees and members of the ARB.

On April 18, 2000, the ARB reconvened the public meeting. At the April 18th meeting, the ARB approved the Church's permit with modifications. Defendants Hennessy and Callahan voted against the approval. On July 15, 2000, the Church submitted new plans to the Building Department, which reflected the modifications mandated by the ARB.

The Church contends it was "compelled" to submit revised plans on August 18, 2000 in response to "comments made on August 17, 2000" by Defendant Barroca, Interim Superintendent of the Building Department. (Am.Compl.¶ 51)

A building permit was issued in October 2000. After approval of the Church's building permit, Plaintiffs allege Solarino, the Superintendent of the Building Department, and Barroca, the Interim Superintendent of the Building Department "then embarked on a negligent and tortious course of conduct which continues to the present day, which has caused the Church to incur substantial and unnecessary costs and expenses." (Am.

Compl.¶ 53) Plaintiffs also contend that Barroca and Solarino embarked on a course of conduct designed to "harass the Church, delay the project, and cause the Church" to abandon the project. (Am. Compl.¶ 54)

As examples of such harassment and delay, Plaintiffs state that the Village issued various Stop Work Orders for failure to submit new plans reflecting even minor changes to the structure after the permit was granted. (Am.Compl.¶ 57) Also, in an April 6, 2001 meeting, Plaintiffs allege that Defendants Solarino and Barroca required "technical and unnecessary information" to avoid the issuance of another Stop Work Order. (Am.Compl.¶ 60) In May 2001, Plaintiffs allege that Solarino refused to work with Rev. Klampert and canceled a meeting schedule on May 23, 2001, just ninety (90) minutes before it was to be held.

On September 25, 2001, Defendant Solarino allegedly rejected an architect's structural steel inspection and demanded certification under seal by a professional engineer. The Village purportedly began requiring steel mill tickets and certification of all bolted and welded connections. (Am. Compl.¶ 69–70) Plaintiffs allege that the Village has never required any other permit applicant or holder to produce steel mill delivery tickets, sworn affidavits of certification, or certified inspection approval of the steel/weld connections. After inspecting certain aspects of the expansion, a representative from Defendant Bowne asked Rev. Klampert, "Who has it in for you? This thing is built like a tank." (Am.Compl.¶ 65) Further, Plaintiffs allege that Defendants Hennessy and Callahan-both Trustees and member of the ARB-communicated with various non-party third persons by telephone and e-mail, in an attempt to force Plaintiffs' counsel to with-

draw from the instant action. (Am. Compl.¶ 82)

Defendants, from their end, state that Rev. Klampert failed to produce documents requested by the Building Department in September 2001, until faced with another Stop Work Order four months later. (Def.'s Mot. Dismiss at 11, n. 3) Further, they state that the Plaintiffs have not shown in the complaint that any of the Village's requests were counter to the customary practice in the industry or that they were driven by improper motives. (*Id.* at 12)

## C. Procedural History

On May 20, 2002, the Plaintiffs filed their Complaint in this Court. On December 10, 2002, Defendant Paul Barroca filed his Answer, and on January 2, 2003, the Defendants filed their motion to dismiss in which Barroca joined. On May 2, 2003, the motion was heard by this Court. At that time, the Defendants withdrew their motion to dismiss in an attempt to mediate the dispute. On October 26, 2004, Plaintiffs filed the instant motion for partial summary judgment and the Defendants renewed their motion to dismiss. Oral argument on the motions was heard on November 5, 2004.

## *DISCUSSION*

## I. DEFENDANTS' MOTION TO DISMISS

Plaintiffs' amended complaint alleges eleven (11) claims, nine (9) of which the Defendants now move to dismiss:

1. Equal Protection violation: on account of religion
2. Equal Protection violation: arbitrary and selective enforcement
3. Substantive Due Process violation: Arbitrary application of zoning and building laws

4. Procedural Due Process violation

5. First Amendment violation: Retaliation for exercise of the First Amendment right to petition

6. First Amendment violation: Interference with Plaintiff's right to seek redress in court

7. Religious Land and Institutionalized Persons Act, 42 U.S.C. § 20000cc ("RLUIPA") violation: on account of unequal terms

8. RLUIPA violation: on account of discrimination

9. RLUIPA violation: on account of unreasonable limitations

10. Malverne Code and Local Law 1-1975 are void

11. Local Law 1-1975 is constitutionally vague and overbroad

Defendants' motion seeks to dismiss Counts 1–9 of the Complaint as to the Defendants for failure to state a claim upon which relief can be granted. The motion also seeks dismissal of the Complaint "in its entirety" as against Defendants Solarino, Barroca, Hennessy and Callahan (collectively "Individual Defendants") on the grounds of qualified immunity.

Rule 12(b)(6) permits both partial and complete dismissal for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss a complaint for failure to state a claim, the Court must assume as true all allegations contained in the complaint. *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998). On Rule 12(b)(6) motions, the Court must assess only the legal feasibility of the complaint and whether Plaintiffs have pled claims on which they are entitled to discovery. *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000); *Chance*, 143 F.3d at 701.[1]

For the following reasons, counts 1–9 are dismissed for failure to state a claim upon which relief can be granted-as to the Individual Defendants as well as the other Defendants.

### A. Claims 1 and 2: Equal Protection

■ The Equal Protection Clause of the Fourteenth Amendment mandates that no state "shall deny to any person within its jurisdiction the equal protection of the laws." Plaintiffs here do not challenge the validity of the zoning restrictions themselves, merely that the zoning laws were applied in a discriminatory manner. An equal protection claim that only challenges the selective enforcement of a law is subject to a two-part test: (1) the Plaintiffs, compared with others similarly situated, must have been selectively treated; and (2) the selective treatment must have been motivated by an intention to discriminate on the basis of impermissible considerations, such as by race or religion, to punish or to inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir.1999) (citations omitted);

---

1. Sidney Bowne, the Village's engineering firm, is also a named Defendant in this action, but does not join in the instant motions. Sidney Browne and Defendant Barroca filed a joint Answer on December 10, 2002. Barroca, who is now apparently an employee of Sidney Browne, is making a motion to dismiss after filing an Answer. Given that Barroca's, 12(b)(6) motion was filed after its Answer, this Court should treat the instant motion to dismiss for failure to state a claim as a motion for judgment on the pleadings pursuant to Rule 12(c). *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 125–26 (2d Cir.2001). This does not affect the analysis of Barroca's claims, however, since the standards for motions brought pursuant to Rule 12(b)(6) and 12(c) are analogous. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999).

*Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995).

On the first element, Plaintiffs succeed-albeit barely-in pleading that they were selectively treated from others similarly situated. Though other Circuits have determined otherwise,[2] this Circuit has recently proclaimed that there is no requirement that the Plaintiffs "identify in [their] complaint actual instances" where others have been treated differently. *DeMuria v. Hawkes,* 328 F.3d 704, 707 (2d Cir.2003). Thus, it suffices for Equal Protection purposes that the Plaintiffs summarily state that "[u]pon information and belief, the defendants imposed subjective, arbitrary, and unreasonable conditions and requirements upon the Church that it has never imposed on any other construction projects of similar or like size and scope." (Am. Compl.¶ 96)

■ However, the Plaintiffs have failed to satisfy the second element of the Equal Protection standard. The Supreme Court has cast doubt on the second prong of this test and found that in a case, such as this one, of a "class of one," the Plaintiff need not allege discriminatory animus and instead may merely allege that "there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam).

While there has remained controversy in this Circuit over whether *Olech* has effectively eliminated the animus requirement, *see Harlen Assoc's v. Incorporated Village of Mineola,* 273 F.3d 494, 499–500 (2d Cir.2001), this discussion is merely academic in the case at bar. No matter which way it is viewed, Plaintiffs have failed to show either that there was no rational basis for the difference in treatment or that the Defendants showed an intention to discriminate.

■ "A zoning board's decision can be considered irrational only when the board acts 'with no legitimate reason for its decision.'" *Harlen Assocs.,* 273 F.3d at 500 (quoting *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996)). Here, there is no evidence that the Defendants acted irrationally in either initially denying the Plaintiffs' expansion proposal or in issuing conditions to the proposals. Such conditions, such as requiring the Church to provide seven (7) off-street parking spots (Am.Compl.¶ 46) falls squarely within the proper scope of a Village's concerns. *Harlen Assocs.,* 273 F.3d at *Harlen,* 273 F.3d at 501 (holding board action not unconstitutionally arbitrary "if the opposition is based on legitimate state interests such as, *inter alia,* traffic, safety, crime, community pride, or noise").

Moreover, there is no showing of malicious, discriminatory or bad faith actions against the Plaintiffs. Plaintiffs merely state in a conclusory fashion that "[u]pon information and belief, the defendants' discriminatory treatment was malicious and made in bad faith on account that the Church was not a mainstream, national denomination and it attracted a large number of worshipers from outside the Village." (Am.Compl.¶ 97) However, Plaintiffs make no allegations to support this contention.

Accordingly, because Plaintiffs' equal protection claim does not satisfy the requirements for a "class of one" action under *Olech* or the religious animus test, it is not permitted to proceed beyond the pleading stage. Motion to dismiss is

---

**2.** *See, e.g., Barrington Cove v. Rhode Island Housing and Mortgage Finance Corp.,* 246 F.3d 1, 8–9 (1st Cir.2001).

therefore granted as to both of the equal protection claims.

## B. Claims 3 and 4: Due Process

The Defendants move for dismissal as to the Plaintiffs' substantive and procedural due process claims.

### 1. Claim 3: Substantive Due Process Violation

■ The third claim of the Complaint alleges arbitrary application of zoning laws in violation of substantive due process principles. In order to establish a substantive due process violation in the Second Circuit, the Plaintiffs must show both (1) that they had a valid property interest in the granting of the permit, and (2) that the Defendants infringed that property interest in an "arbitrary and irrational manner." *Harlen Associates*, 273 F.3d at 503.

■ The threshold issue for analyzing due process claims is whether the Plaintiff was deprived of a property interest. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiffs attempt to hedge their constitutional bets by stubbornly remaining vague as to what specific instance in time deprived them of a constitutionally guaranteed property right. It is unclear to this Court, even after oral argument on this issue, whether the Plaintiffs claim a property deprivation in (a) the purported "denial" of the 1998 Proposal; (b) the alleged harassment and delay in permitting the construction on the 1999 Proposal; or (c) some combination thereof. Any way the Plaintiffs slice it, their due process claim fails and the motion to dismiss is granted.

For example, at times the Plaintiffs appear to base their property deprivation claims on the bare assertion that they had a vested entitlement to the proposed 5,700 expansion in their 1998 Proposal. However, since it appears that the Plaintiffs

themselves in fact may have withdrawn this application, it would seem that the Village did not deny any substantive due process rights to them.

■ Moreover, the Plaintiffs have not adequately pled in their complaint that there was a very strong likelihood that their 1998 Proposal should have been approved as it was submitted. In the Second Circuit, a "legitimate claim of entitlement" exists where, under applicable state law, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir.1995) (quoting *Yale Auto Parts v. Johnson*, 758 F.2d 54, 59 (2d Cir.1985)). As a general rule, the touchstone of "entitlement" is whether the issuing authority lacks discretion to deny the permit. If the governing body has discretion in deciding whether to issue the permit, the federal courts will not sit as a "superseding body" to local administrative agencies. *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir.1999); *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir.1995). Indeed, when considering the issue, the federal court should be mindful not to become a zoning board of appeals and not to review non-constitutional issues of land use determinations by local administrative agencies. *Crowley v. Courville*, 76 F.3d 47, 52 (2d Cir.1996); *T.S. Haulers, Inc. v. Town of Riverhead*, 190 F.Supp.2d 455, 461 (E.D.N.Y.2002) (Spatt, J.).

■ Here, the zoning law vests considerable discretion in the Board with respect to issuing permits. Plaintiffs mistakenly rely on Village Code 49–11, *et seq*, to claim what it considers to be its clear entitlement to the permit. However, § 49–11 is clearly discretionary on its face. *See* § 49–11 (stating that "[a] building *may* be

erected, altered or used, and a lot or premises *may* be used, for any of the following purposes and for no other... [such as] educational, religious, or philanthropic use...") (emphasis supplied). "The fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim." *RRI Realty Corp. v. Incorporated Village of Southampton,* 870 F.2d 911 (2d Cir.1988).

As an alternative, Plaintiffs also claim a deprivation of such property right once the permit was issued in October 2000 based on the 1999 Proposal. At that point of approval, the Church maintains it held a "legitimate claim of entitlement" to reap benefits from the permit as it was awarded. Plaintiffs allege that the arbitrary and capricious behavior of the Village officials thereafter needlessly stalled and delayed the Church expansion such that Plaintiffs experienced a significant deprivation of their property rights.

Here, the Plaintiffs were ultimately granted approval of their 1999 proposal. Neither party cites to case law to show that the Plaintiffs are entitled to unmitigated approval of the Proposal. It seems to be entirely within the Village's purview to attach conditions of satisfaction to the project.[3] Moreover, the Plaintiffs have failed to cite to any definitive proof-or even alleged-that these "delays" were caused by any religious or otherwise malevolent animus by the Village. *See* discussion below on the second prong of the due process standard. Even taken together as a whole-the purported denial of the 1998 Proposal and the alleged harassment and delay-the record fails to show any violation that would rise to constitutional levels.

■ In any event, there has been little evidence that the Village has acted in a shocking, abusive, capricious, or arbitrary manner. "The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). The Second Circuit has held that arbitrary action by a zoning board to deny lawful use of property may constitute a substantive due process violation. *Walz,* 46 F.3d at 168–69.

As a basic matter, however, even arbitrary conduct that might violate zoning regulations as a matter of State law (and thereby entitle Plaintiff to relief in an Article 78 proceeding) may not be sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause. *Natale,* 170 F.3d at 262; *Yale Auto Parts,* 758 F.2d at 58–59 ("Indeed, even an outright violation of [S]tate law in the denial of a license will not necessarily provide the basis for a federal claim....when the applicant has a[S]tate law remedy") (citation omitted). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Bower Assocs. v. Town of Pleasant Valley,* 2 N.Y.3d 617, 628, 781 N.Y.S.2d 240, 814 N.E.2d 410 (N.Y.2004) (citation omitted); *Harlen,* 273 F.3d at 501 (holding board action based on community opposition is not unconstitutionally arbitrary "if the opposition is based on legitimate state interests such as, *inter alia,* traffic, safety, crime, community pride, or noise").

The activities of the Defendants in this case did not transgress the "outer limit" of legitimate governmental action, therefore,

---

**3.** Indeed, Local Law 1–1975 states, "[i]n approving any application the Board may impose appropriate conditions and safeguards..."

they do not give rise to a federal substantive due process claim. Even drawing all inferences in favor of the Plaintiffs, Plaintiffs' allegations that Village officials stalled and delayed the Church expansion do not rise to the requisite level of "shocking, abusive, capricious, or arbitrary" behavior so as to be a constitutional violation. Further, the so-called "denial" of the 1998 Proposal, for reasons explained before, also does not concern this Court. Accordingly, Defendants' motion to dismiss on this claim is granted.

### 2. Claim 4: Procedural Due Process Violation

 Plaintiffs argue that the Building Department temporarily deprived the Church of its procedural rights when the Defendants: (i) failed to act in a timely manner with respect to the 1998 Proposal, (ii) initially treated the 1999 Proposal as an unlawful "business use" and failed to give a "meaningful" hearing on at least two occasions, and (iii) on three separate occasions issued Stop Work orders. The Plaintiffs have a cognizable procedural due process claim if they have been deprived of a right, privilege or immunity, secured by United States law or Constitution, without sufficient procedure attending the deprivation. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). This is a two step process in which the Court must first determine whether there exists a liberty or property interest in which the State has interfered. *Id.* (citations omitted). The motion to dismiss is granted here because the Plaintiffs have failed to show in their Complaint that they were deprived of any constitutionally viable property interest.

In essence, the first two claimed procedural defects are grounded in the Plaintiff's notion that they were entitled to approval of the building permits as originally submitted in 1998 and 1999. (Pl.'s Opp. Mem. Mot. Dis. at 16) However, as discussed in the substantive due process section, this does not constitute a tangible property interest for due process purposes. The Plaintiffs were ultimately granted approval on the expansion-albeit after some modifications of the application-and thus they have not suffered a compensable procedural due process injury for these two claims.

In addition, Plaintiffs claim that they were entitled to pre-deprivation due process procedures, presumably in the form of a right to be heard, before the Stop Work orders were implemented. As a threshold matter, the Court does not believe that the Stop Work orders at issue here may be considered deprivations of a property interest so as to require any more procedural safeguards than they already received from the Defendants. Though the Court recognizes that there may be circumstances under which a Stop Work order may constitute a property deprivation for purposes of due process, *see Tri County Indus. v. District of Columbia,* 104 F.3d 455, 460–462 (D.C.Cir.1997) (holding Stop Work order violative of procedural due process that required "indefinite suspension of a building permit" based on the unconfirmed and inaccurate statement of a Department of Housing representative), such is not the case here. In this case, the Stop orders were only temporary suspensions from which the Plaintiffs could get relief by satisfying the Village's conditions.[4] Though the Defendants utterly fail to provide any facts to support their posi-

---

**4.** The Court further notes that Local law 1–1975 specifically states, "[i]n approving any application the Board may impose appropri-ate conditions and safeguards designed to prevent the harmful effects set forth in this local law." § 6–12.5(D).

tion,[5] it appears from the Amended Complaint that the Stop Work orders in this case were issued because of, *inter alia*, the Plaintiffs' failures to provide the necessary steel mill tickets and certification of all bolted and welded connections and the Plaintiffs' failure to submit expansion plans according to the Building Department's specifications. (Am.Compl.¶¶ 57–73). Assuming the Plaintiffs' allegations in the complaint as true, since the Plaintiffs' had the opportunity to remedy these alleged deficiencies, these Stop Work orders are not an unconstitutional deprivation of any property right.[6]

Though the Court need not reach the procedural issue here, it does note that there is nothing in Local law 1–1975 that would require the Defendants to hold a hearing or any other pre-deprivation proceeding before issuing a Stop Work order. *See* § 6–12.3 "Procedures of the Board" (stating only "[t]he Board may hold a public hearing when it deems the same to be in the public interest").

Accordingly, the motion to dismiss is granted as to this claim.

### C. Claims 5 and 6: First Amendment

#### 1. Claim 5: Retaliation for exercising First Amendment Rights

 "To establish a retaliation claim under § 1983…[Plaintiff] must show: (1) his conduct was protected by the First Amendment; and (2) such conduct prompted or substantially caused defendant's actions." *Dougherty v. Town of*

*North Hempstead Bd. of Zoning*, 282 F.3d 83, 91 (2d Cir.2002). In this case, Plaintiffs' right to exercise their religious beliefs is clearly a fundamental First Amendment right, thus this first prong is satisfied.[7] Defendants fail, however, to fulfill the requirement that they show the Defendants' actions were prompted or substantially caused by the Plaintiffs' right to exercise their religious beliefs. Plaintiffs allege in the Complaint that Defendants targeted the Church from the commencement of the permit application process. Plaintiffs claim that the Defendants' intent and motive to discriminate against the Church based on its size and religious affiliations is clear from the pattern of actions over the span of multiple years.

However, it is not clear to this Court that the Defendants' actions towards the Church were inspired by a motive to discriminate against the Church based on its religious affiliation. Although the Second Circuit has held that "[i]t is sufficient to allege facts from which a retaliatory intent on the part of the defendants may reasonably be inferred," *Dougherty*, 282 F.3d at 91 (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 195 (2d Cir.1994)), the Plaintiffs have failed to show even the minimal amount of facts in its Amended Complaint from which the Court might make such an inference. Accordingly, Defendants' motion to dismiss is granted on this claim.

---

**5.** Indeed, they incorrectly cite to "takings" case law to support their point of view. (Def.'s Mot. Dismiss at 19–20)

**6.** The Plaintiffs also cite to *Norton v. Town of Islip*, 239 F.Supp.2d 264 (E.D.N.Y.2003) to support their position. *Norton* is inapposite to the case at hand because, unlike the case here, it involves the complete revocation of the Plaintiffs' certificate of occupancy.

**7.** A large part of Plaintiffs' claims is that due to the delay and harassment the Church allegedly incurred during the process of building the proposed expansions, the First Amendment rights of the Church's congregation were abridged because there was not enough space for everyone to worship.

### 2. Claim 6: Interference with Access to Courts

 For a party to establish a violation of the right to access to the Courts, he or she "must demonstrate that the alleged deprivation actually interfered with his [or her] access to the courts or prejudiced an existing action." In addition, the plaintiff must demonstrate that an "actual injury" resulted from the denial of access to the Courts. *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). The "actual injury" requirement for a denial of access to the courts is "more than just any type of frustrated legal claim." *Id.* at 353, 116 S.Ct. 2174. For example, "delays in communicating with the courts or delays in the ability to work on a legal action do not rise to the level of a constitutional violation." *Id.* (citing *Jones v. Smith*, 784 F.2d 149, 151–52 (2d Cir.1986)).

 Here, the Amended Complaint consists of conclusions without factual support which, even if taken as true, fail to state a claim that Defendants interfered with access to the courts or prejudiced the existing action. The Complaint contains vague allegations that Defendants, particularly Callahan and Hennessy, attempted to coerce Plaintiffs' counsel from discontinuing his representation of the Church by "contacting" major clients of Plaintiffs' counsel. This claim, along with general allegations that Defendants "deprived the Plaintiffs of their constitutionally protected rights" (Am.Compl.¶ 129) does not state a claim for interference with access to the Courts. Furthermore, Plaintiffs state no claim of "actual injury" resulting from Defendants' actions. Plaintiffs were not barred from filing the instant lawsuit nor was Plaintiffs' counsel actually coerced into discontinuing his representation of Plaintiffs.

Therefore, Plaintiffs have failed to state a claim for interference with access to the Courts in violation of the First Amendment and claim 6 is dismissed.

### D. Claims 7, 8, and 9: RLUIPA

The Defendants move to dismiss on two grounds under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000c–1, ("RLUIPA"): (i) RLUIPA may not be applied retroactively so as to encompass the Defendants' alleged actions, and (ii) in any event, the Plaintiffs have not stated facts in their complaint that would create a cognizable claim under RLUIPA.

First, the Defendants argue that RLUIPA may not be applied retroactively so as to include the events that the Plaintiffs claim in their Amended Complaint. Defendants argue that Plaintiffs based their RLUIPA claims on the first building permit denial on May 19, 1999, in which the Building Department found the application amounted to a "business use." [8] RLUIPA became law on September 22, 2000, over a year after the first permit "denial" and less than a month before a building permit was finally issued to the Plaintiffs.

 Where, as here, the statute is silent as to its temporal application, the Court must determine whether the new statute might have retroactive effect. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). A new statute such as RLUIPA will be deemed to have retroactive effect if:

> ....it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would

---

**8.** Plaintiffs do not even address the retroactivity issue in their papers.

operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.*

Under this standard, RLUIPA might have some retroactive effect; however, the Court here need not resort to the judicial default rule as outlined by *Landgraf.* While some of the claims in the Complaint involve pre-enactment events, a large portion of the Complaint details action allegedly engaged in by the Defendants after the permit was issued in October of 2000, the purpose of which was purportedly to harass the Church and attempt to stop the project. These actions occurred up until the filing of this lawsuit in 2002 and allegedly continue to occur. Accordingly, the actions alleged in Plaintiffs' Complaint occurred after the passage of RLUIPA and as such, retroactivity of the statute is not an issue.

Moreover, while there is a dearth of case law construing RLUIPA in this Circuit owing to its relatively recent enactment, there is some authority that states that RLUIPA may not be applied retroactively for monetary damages for pre-RLUIPA claims but may be applied retroactively for injunctive relief since such relief is considered prospective regardless of when the actions occurred. *Prater v. City of Burnside,* 289 F.3d 417, 433 (6th Cir.2002); *Kikumura v. Hurley,* 242 F.3d 950, 961 n. 5 (10th Cir.2001) (citation omitted).[9] As such, under this rule, since the Plaintiffs' Amended Complaint calls for both monetary damages as well as injunctive relief, retroactivity is not an issue here as well.

Second, although retroactivity may not be an issue, the Court finds that the Amended Complaint may not stand on the merits of its RLUIPA claims. In order to establish a prima facie violation of RLUIPA, a Plaintiff must present evidence that the land use regulation at issue as implemented: (1) imposes a substantial burden, (2) on the "religious exercise," (3) of a person, institution, or assembly. 42 U.S.C. § 2000cc(a)(1); *Murphy v. Zoning Comm'n of the Town of New Milford,* 148 F.Supp.2d 173, 187 (D.Conn.2001). If the Plaintiffs are successful in making that prima facie showing, the burden shifts to the government to demonstrate that the regulation furthers a compelling governmental interest and is the least restrictive means of furthering that compelling interest. 42 U.S.C. § 2000cc(a)(1)(A-B).

The definitions portion of the statute defines "land use regulation" as a "zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership...interest in the regulated land..." 42 U.S.C. § 2000cc–5(5). RLUIPA also provides that the term "religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and outlines a rule that "the use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. § 2000cc–5(7).

Plaintiffs argue that the facts of this case are precisely what was contemplated by Congress when it enacted RLUIPA.

---

**9.** There are a few unpublished opinions in this jurisdiction that follow that same line of thought. *Orafan v. Goord,* No. 00CV2022, 2003 WL 21972735, * 8 (N.D.N.Y. August 11, 2003); *Cancel v. Mazzuca,* No. 01 Civ. 3129, 2003 WL 1702011, * 6 (S.D.N.Y. March 28, 2003).

The legislative history of RLUIPA is instructive:

> The right to assemble for worship is at the very core of the free exercise of religion. Churches and synagogues cannot function without physical space adequate to their needs and consistent with their theological requirements. The right to build, buy, or rent such a space is an indispensable adjunct of the core First Amendment right to assemble for religious purposes. The hearing record compiled massive evidence that this right is frequently violated. Churches, in general, and new small, or unfamiliar churches in particular, are frequently discriminated against in the fact of zoning codes and also in highly individualized and discretionary processes of land use regulation.

146 Cong. Rec. S. 7774–5 (July 27, 2000). The statute states that these provisions should apply when the substantial burden on religious exercise is imposed "in the implementation of a land use regulation or system of land use regulations, under which the government makes, or has in place formal or informal procedures or practices that permit a government to make individualized assessments of the proposed uses of the property involved." 42 U.S.C. § 2000c(a)(2)(C).

■ Notwithstanding the broad language in the legislative history of RLUIPA, the Plaintiffs here have not pled a colorable RLUIPA claim. Because the Village did not completely deny the Church's application, its actions cannot be said to constitute a "substantial burden" on religious exercise. *Westchester Day Sch. v. Village of Mamaroneck*, 386 F.3d 183, 187 n. 3 (2d Cir.2004). The facts in *Westchester Day School* are illuminating in this case. There, the Village of Mamaroneck and its Zoning Board of Appeals had denied a religious day school's application

to expand its school building, citing traffic and parking concerns. *Id.* at 185–186. The proposed expansion plan served some religious purposes (such as building a chapel and a Jewish scholarship space), but mostly served a secular purpose (such as administrative offices and computer and art classrooms). *Id.* The Second Circuit vacated the District Court's grant of summary judgment on the Plaintiff's RLUIPA claim because the religious day school's decision did not "pronounce the death knell of the School's proposed renovations in their entirety, but rather [denied] only the application submitted, leaving open the possibility that a modification of the proposal [addressing the Board's concerns] . . . would result in approval." *Id.* at 188. Though not the basis of the Court's ruling, it also considered it relevant that the School's proposed renovations involved some secular purposes. *Id.* 189–90.

Here, the Plaintiffs not only had the opportunity to re-submit their 1998 expansion Proposal, but they *did*, and were granted approval by the Village. Such an approval is clearly not the "complete denial" that RLUIPA contemplates and thus may not be deemed to be the "substantial burden" on religious exercise that the Plaintiffs claim. Moreover, as the legislative history of RLUIPA recognizes, "not every activity carried out by a religious entity or individual constitutes 'religious exercise.' In many cases, real property is used by religious institutions for purposes that are comparable to those carried out by other institutions." 146 Cong. Rec. S7774–01 (July 27, 2000). Such is the case here, where in oral argument, counsel for the Church estimated that while some of the expansion plans dealt with development of the sanctuary area, the majority of it was in building out administrative offices. Simply because the Church is a religious institution does not mean it re-

ceives an unencumbered right to zoning approval for non-religious uses.

For the foregoing reasons, the Defendants' motion to dismiss is granted with respected to claims 7, 8, and 9.

### E. Qualified Immunity

Defendants argue that Solarino, Barroca,[10] Hennessy and Callahan are all protected by the qualified immunity defense. Defendants Hennessy and Callahan are both Trustees and members of the ARB. Defendants Solarino and Barroca were the Superintendent and Interim Superintendent respectively of the Village Building Department.

 The qualified immunity defense protects government officials from civil liability arising from the performance of their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Giacalone v. Abrams*, 850 F.2d 79, 85 (2d Cir.1988). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Discretionary functions are only protected if either: (1) the Defendants' actions do not violate clearly established law, or (2) it was objectively reasonable for the Defendants to believe their action did not violate such law. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996).

 Though a qualified immunity defense may be advanced on a 12(b)(6) motion, it faces a "formidable hurdle" when advanced at such an early stage in the proceedings. *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir.2004). Unlike a motion for summary judgment where the movant may submit affidavits in furtherance of the defense, in a 12(b)(6) motion the defense must appear on the face of the complaint. *Id.* In addition, it may only be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Citibank, N.A. v. K–H Corp.*, 968 F.2d 1489, 1494 (2d Cir.1992).

In this case, however, because the Court finds that the Plaintiffs have not articulated any constitutional violation, the question of the propriety of the Defendants' qualified immunity defense is moot. Without an underlying constitutional violation, qualified immunity cannot attach. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (involving § 1983 claim) ("[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").

Accordingly, the motion to dismiss is moot concerning Counts 1–9 of the Plaintiffs' Amended Complaint.

## II. MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Rule 56(c) Standard

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue as to any

---

**10.** There is a question as to whether Defendant Barroca may even raise a qualified immunity defense for actions taken since he has moved to private practice at Sidney Bowne, the Village's engineering firm. However, since the Court finds that the issue of qualified immunity is moot (due to lack of constitutional violation), we need not reach the issue here.

material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the specific pleadings, and 'designating specific facts showing there is a genuine issue for trial.'" *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

Plaintiffs move for partial summary judgment on two grounds (i) that the Village's enactment of Local Law 1–1975 was not in accordance with New York General Municipal Law § 239–m and is therefore void, and (ii) the Village's refusal to approve the Church's 1998 and 1999 applications constitute violations of the Church's substantive due process rights. For the following reasons, both motions for summary judgment are denied.

### B. Local Law 1–1975

■ Plaintiffs claim that the Village wrongfully relied on Local Law 1–1975 in downsizing and delaying the Church's 1998 and 1999 Proposals. Plaintiffs claim that Local Law 1–1975 is void and unenforceable because it was not enacted in accordance with New York State law, which it says requires the Village to refer any pro-

posed zoning action to the Nassau County Planning Commission ("NPC") before enactment.[11] (Pl.'s Mem. Sum. J. at 7–9).

However, there remains a material question of fact as to whether the Village did refer Local Law 1–1975 to the NPC. Plaintiffs provide an affidavit from their attorney Patrick Michael McKenna attesting to his inability in 2004 to secure, by Freedom of Information request, records of a 1975 referral from with the NPC or the Village of Malverne. Defendants offer a rebuttal affidavit from the Deputy Village Clerk Antoinette Sussman, a twenty-year employee of the Village, who attests that in her experience the NPC is unable to retrieve records more than five (5) or six (6) years old.

Accordingly, as there remains a question of fact as to this issue at this time, summary judgment should be denied as to this claim.

### C. Substantive Due Process

Plaintiffs have not established a violation of their substantive due process rights because they have failed to make a colorable argument as to a violation of their constitutional rights. As stated above, in order to establish a substantive due process violation in the Second Circuit, the Plaintiffs must show both (1) that they had a valid property interest in the granting of the permit, and (2) that the Defendants infringed that property interest in an "arbitrary and irrational manner." *Harlen Assocs.*, 273 F.3d at 503.

### i. Church's Property Interest

As with their other claims of constitutional violations, the Plaintiffs weave the

---

11. New York General Municipal Law § 239–m requires: "Referral of proposed planning and zoning actions. In any city, town or village which is located in a county which has a county planning agency . . . each referring

body shall, before taking final action on proposed actions included in subdivision three of this section, refer the same to such county planning agency or regional planning council."

same flawed arguments into its due process claim. By remaining nebulous as to what action *exactly* constituted the claimed property deprivation, Plaintiffs rely on this Court to articulate its constitutional concerns. However, no matter how this Court tries to fashion it for the Plaintiffs', these claims-like most of the others-are of no constitutional significance.

As stated above, it is still unclear to this Court whether the Plaintiffs claim a property deprivation in (a) the purported "denial" of the 1998 Proposal; (b) the alleged harassment and delay in permitting the construction on the 1999 Proposal; or (c) some combination thereof. As discussed more fully *supra* in section I(B)(1), whether taken as a single deprivation of property or taken as a larger, continuing deprivation, this Court does not believe the Plaintiffs' claim rises to the constitutional level.

Accordingly, summary judgment should be denied.

ii. **"Arbitrary and Irrational Manner"**

Even if the Plaintiffs could establish a property entitlement to the Church expansion, the record is barren of any evidence that the ARB or the ZBA acted in an "arbitrary and irrational manner" so as to constitute a constitutional violation in denying the application.

Plaintiffs cite to *HBP Associates v. Marsh*, 893 F.Supp. 271 (S.D.N.Y.1995) for the proposition that an undue delay may provide the basis of the Court's finding that the governmental entity acted arbitrarily and irrationally for due process purposes. In *HBP Assoc's*, the owner obtained preliminary subdivision approval from the Village planning board, but it could not get approval for its proposed sewer line extension. 893 F.Supp. at 275. However, unlike the facts in the case at bar, the Plaintiffs there were facing a nine (9) year moratorium that the State had imposed on all sewer extensions on the County. This moratorium was to be in effect until the County satisfactorily proved to the State that it had excess capacity in the plant to handle the growth. The Court found that the County's failure to comply with the State's mandates constituted a substantive due process violation of the Plaintiff. *Id.* at 279. Here, however, we are dealing with a delay of a little over a year-not nine years. In addition, the Plaintiffs here have the ability to satisfy the conditions that the Village has imposed on them, unlike *HBP* where the Plaintiff was powerless to get Village approval absent the County's compliance with State mandates. Such a one year delay would hardly appear to constitute the egregious action that the due process clause contemplates.

 Moreover, there appears to remain a question of fact as to what "use" the Church intended its 1998 and 1999 Proposals to further. Building Zone Ordinance § 49-11 ("BZO 49-11") provides that:

A. A building may be erected, altered, or used, and a lot premises may be used, for any of the following purposes and for no other:

(3) Educational, religious, or philanthropic use...

(7) Accessory use on the same lot with and customarily incidental to any of the above permitted uses including a private garage...

It is unclear on the record the Church's intended use of the expansion under both its 1998 and 1999 proposals. Contrary to what the Plaintiff's argue, BZO 49-11 and federal case law illustrate that the Church, as a religious institution, is not granted unfettered ability to expand. The Village's

**394**

discretion to deny applications (as shown by the "may" language in BZO 49–11) as well as the clearly delineated approved uses in BZO 49–11 (only those that are "accessory use[s]" and "customarily incidental" to religious use), clearly indicate that the Church must describe the purpose of its expansion. Thus far, it has failed to do so, merely clutching at its tenet that it was entitled "as of right" to the issuance of the building permit. This does not satisfy its burden for summary judgment purposes.

At oral argument, counsel conducted quick "off-the-cuff" calculations as to the various uses towards which the Church intended to use the expansion. Such unsubstantiated speculation, however, is not enough to raise the Plaintiffs over the summary judgment hump.

Having failed to convince this Court of the constitutional infirmity of the Village's decision, this Court is without jurisdiction to review the Defendants' decision. Consequently, motion for summary judgment is denied as to this claim.

### CONCLUSION

As there are no constitutional issues before this Court, the case is more properly presented to New York State court in an Article 78 proceeding. Consequently, Defendants' motion to dismiss is **GRANTED**. However, dismissal here is granted without prejudice to the Plaintiffs to re-plead within twenty (20) days of the date of this decision if they can do so consistent with their obligations under Rule 11 of the Federal Rules of Civil Procedure and with the parameters set forth in this decision. Finally, Plaintiffs' motion for partial summary judgment is **DENIED**.

SO ORDERED.