**Jeffrey KIRBY, Plaintiff,**

v.

**YONKERS SCHOOL DISTRICT and Bernard Pierorazio, in his individual capacity, Defendants.**

**No. 07 Civ 10684 (WGY).**

United States District Court, S.D. New York.

Feb. 11, 2011.

Michael Howard Sussman, Sussman & Watkins, Goshen, NY, for Plaintiff.

Vincent Paul D'Andrea, Sr., Donoghue, Thomas, Auslander & Drohan, Scarsdale, NY, for Defendants.

## Memorandum and Order

WILLIAM G. YOUNG, District Judge.[1]

## I. INTRODUCTION

Jeffrey Kirby ("Kirby") brings this suit against the Yonkers School District (the "District") and Bernard Pierorazio ("Pierorázio"), the Superintendent of the District, (together, the "Defendants") alleging violations of his First and Fourteenth Amendment rights, and of New York state law. Specifically, Kirby alleges that the Defendants: (1) retaliated against him for exercising his First Amendment right to free speech; (2) violated his Fourteenth Amendment rights to procedural and substantive due process; and (3) violated the laws of the state of New York. Compl., ECF No. 1. On October 30, 2009, the Defendants filed a motion for summary judgment. Mot. Summ. J., ECF No. 14. The Court held an oral motion hearing on November 16, 2010, and took the motion under advisement.

## II. FACTUAL BACKGROUND [2]

In September 2006, Kirby was hired as a probationary tenure-track health teacher by the District and assigned to teach at the Pearls Hawthorne School, which serves pre-kindergarten through eighth grade. Affirmation Supp. Mot. Summ. J., Ex. C, ECF No. 15; Watkins Affirmation, Ex. 12, Kirby Dep. 16–18, ECF No. 24–3.

Elizabeth DiDomenico ("DiDomenico"), a teacher with 35 years experience in the District, was his informal mentor. *See* Kirby Dep. 78.

## The Icebreaker Exercise

On the morning of January 24, 2007, Kirby taught a class to seventh graders involving health and human reproduction. Compl. ¶ 10. Before the class, Kirby spoke with DiDomenico and requested from her some ideas to make the students feel more comfortable with the topic. Kirby Dep. 54:15–21. She suggested an icebreaker exercise ("the Icebreaker") that allegedly she had done for many years at the middle school level. *Id.* at 55:12–18. This Icebreaker consisted of asking certain students to volunteer to draw the male reproductive system on the blackboard and label its parts (as discussed in the previous class). *Id.* at 59:8–20.

On that day, during the class, five or six children went to the blackboard, and after drawing the male reproductive system, they labeled sperm and testosterone in a manner consistent with the textbook. *Id.* at 68:16–25. It was only after the drawings were almost complete that Amanda, a female student who was late for class, entered the classroom and saw the drawings on the blackboard. *Id.* at 68:7–10, 70:10–12. Kirby mentioned that the class was doing the Icebreaker. *Id.* at 70:17. Less than a minute after entering the class, Amanda left the class purportedly to

---

**1.** Of the District of Massachusetts, sitting by designation.

**2.** For the purpose of this summary judgment motion, the factual summary presented here consists of undisputed facts and disputed facts in the light most favorable to Kirby, the non-moving party. The Court reviews the record as a whole, but "it must disregard all evidence favorable to the moving party that the

jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Accordingly, on any issue on which the moving party bears the burden of proof, the Court will disregard evidence in favor of the moving party—even if uncontradicted—that the jury would be free to disbelieve. *See id.*

use the restroom and did not return. *Id.* at 70:21–25, 71:2.

At the end of the period, Kirby was summoned to meet with Amanda's father, Mr. Ramirez ("Ramirez"), who had decided to come to the school after learning about the Icebreaker. *Id.* at 80:11–18, ECF No. 24–4. The School's principal, Mr. Campanero ("Campanero"), and his assistant, Ms. Brown ("Brown"), were also present at the meeting. *Id.* Ramirez stated that Kirby should be fired and threatened to contact the news media. *Id.* at 87:5–8. In fact, he did go to the media and the story ran on local and national television over the next two days. Watkins Affirmation, Ex. 2, Andrew Kirtzman, *Yonkers Teacher Under Fire For Anatomy Assignment: Health Teacher Asked 7th Graders to Draw Genitalia,* CBS Broadcasting, Jan. 27, 2007, ECF No. 24–1; Affirmation Supp. Mot. Summ. J., Ex. V, Hannan Adely, *Yonkers Teacher Who Had Students Draw Penis Back In Class,* The Journal News, Mar. 22, 2007, at A4, ECF No. 15. On or about January 26, 2007, Pierorazio issued a statement to the media in which he stated that Kirby's actions were "unprofessional" and "unacceptable" and that "[t]o just ask individuals to come and draw freestyle male anatomy is insensitive to the children." Affirmation Supp. Mot. Summ. J., Ex. V., Andrew Kirtzman, *Yonkers Teacher Under Fire For Anatomy Assignment: Health Teacher Asked 7th Graders to Draw Genitalia,* ECF No. 15; Watkins Affirmation, Ex. 12, Pierorazio Dep. 10:17–20.

Kirby claims that Pierorazio did very little to confirm whether Kirby had acted in an unprofessional and unacceptable way. Kirby Rule 56.1 Reply ¶ 3, ECF No. 22. Kirby states that: (1) "[Pierorazio] did not speak with him to ascertain the origins or contents of the Icebreaker," *Id.* ¶ 36; Pierorazio Dep. at 17:7–11; (2) "[he also] ignored Ms. DiDomenico's input that the exercise was consistent with the textbook the students were using and the New York state health education curriculum," Kirby Rule 56.1 Reply ¶ 38; Pierorazio Dep. at 15:6–7; (3) and he ignored the fact that DiDomenico had been doing the same exercise for more than 10 years and continued to do so in her health classes after Kirby's class without incident. Kirby Rule 56.1 Reply ¶¶ 36–37; Pierorazio Dep. at 15:14–18.

On January 25, 2007, one day after the parental complaint, Pierorazio informed Kirby that he was recommending his termination. Affirmation Supp. Mot. Summ. J., Ex. F, January 25, 2007 Letter, ECF No. 15. Through his union, Kirby requested a hearing before his termination. Watkins Affirmation, Ex. 5, Letter of January 29, 2007, ECF No. 24–2. On March 20, 2007, the District notified the Yonkers Federation of Teachers that Kirby would not be terminated: [3]

> Upon careful review of the testimony regarding the termination hearing of Health Teacher, Jeffrey Kirby, it is my determination that Mr. Kirby's employment with the School District will not be terminated.

---

**3.** From January 25 to March 21, Kirby's position was adjusted from health teacher at Pearls Hawthorne to health teacher at the personnel department. Affirmation Supp. Mot. Summ. J., Ex. E, February 2, 2007 Letter, ECF No. 15. After the District decided that Kirby would not be terminated, the District reassigned him to be a health teacher at the Emerson Middle School ("Emerson"). Affirmation Supp. Mot. Summ. J., Ex. N, March 21, 2007 Letter, ECF No. 15. Kirby was allegedly told that he was going to be teaching health and physical education, but was instead assigned to other classes. Kirby Dep. 24.

Affirmation Supp. Mot. Summ. J., Ex. L, March 20, 2007 Letter, ECF No. 15.

On April 2, 2007, Kirby filed a Notice of Claim alleging:

> In or about January 25, 2007, Bernard P. Pierorazio, Superintendent of Schools, Yonkers Public Schools, negligently, and with malice, stated falsely to news reporters … that Claimant's behavior, as a teacher within said district, was unprofessional, insensitive and unacceptable.

Watkins Affirmation, Ex. 8, Sussman Letter Attached to Notice of Claim, ECF No. 24-2.

### A. Physical Confrontation with a Student

During one of Kirby's classes on June 5, 2007, a student was throwing paper balls at other students. Kirby Dep. 167:9–10, 168:20–22. Kirby attempted to stop the student, but the student refused and said "Fuck off". Watkins Affirmation, Ex. 6, June 5th Memorandum, ECF No. 24-2. A few minutes later, when Kirby was trying to put a movie in the VCR, the same student moved a chair and sat right in front of the television. *Id.* Kirby asked the student to return to his seat. *Id.* The student replied that he wanted "to sit in this fucking chair" and said, "I'll punch you in the face, mother fucker." *Id.;* Kirby Dep. 175:9–14. Kirby claims that he called security to ask for assistance. June 5th Mem. In response, the student moved toward Kirby and bumped him in his chest. *Id.* Kirby advised the student to back off and not touch him again, but the student came toward him and bumped him again, pushing him to the corner of the classroom. *Id.* To separate himself from the student, Kirby pushed the student's shoulders. *Id.* Eventually, several security guards responded to the scene. Kirby Rule 56.1 Reply ¶ 66. After this incident, the District conducted an investigation led by Pasquale Picarella ("Picarella"), who conducted it at Pierorazio's direction. *Id.* ¶ 75; Pierorazio Dep. at 6:5–15. According to Picarella's report, eight students stated that Kirby pushed and punched the student in question in the stomach. Kirby Rule 56.1 Reply ¶¶ 71, 76. Kirby disputes Picarella's report, which according to him lacks supporting documentation. *Id.* ¶ 79.

On June 18, 2007, Superintendent Pierorazio notified Kirby that he would be recommending Kirby's termination as a result of this incident:

> This is to notify you, pursuant to State Education Law Section 3031, that I will be recommending to the Yonkers Public Schools Board of Trustees that your services as a Health teacher with the Yonkers Public Schools be discontinued effective thirty (30) days after the July 2007 Board Meeting.
>
> The Board of Education will act on this recommendation at its July 2007 Board Meeting.

Affirmation Supp. Mot. Summ. J., Ex. S, June 18, 2007 Letter, ECF No. 15. In response to a request from Kirby's union representative, Ms. Puleo ("Puleo"), Pierorazio stated that the reasons supporting his recommendation were (1) unprofessional conduct, and (2) inappropriate physical contact with a student. Affirmation Supp. Mot. Summ. J., Ex. T, June 29, 2007 Letter, ECF No. 15. Before sending this letter, however, Pierorazio had already sent a June 15, 2007 e-mail to the District's director of human resources in which he wrote: "[y]ou were told to terminate Kirby for his actions…. You can't hesitate on these issues, once the investigation is complete act." Watkins Affirmation, Ex. 9, June 15, 2007 E-mail, ECF No. 24-2.

By letter dated July 11, 2007, Pierorazio advised Kirby:

> [A]fter careful consideration of all the relevant facts and after having heard

your statements and those of your representative at the informal hearing which was held in this matter, my recommendation to the Board of Education to terminate your services as a probationary teacher remain[s] in effect.

Affirmation Supp. Mot. Summ. J., Ex. U, July 11, 2007 Letter, ECF No. 15. Kirby's employment as a probationary teacher was terminated effective August 18, 2007.

## III. ANALYSIS

### A. Legal Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R.Civ.P. 56(c). The moving party has the initial burden to show that there exists no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this burden, the nonmoving party, through evidence, must demonstrate the existence of a material factual dispute to defeat summary judgment. *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir.1999). All facts are taken in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

### B. First Amendment Claim

Kirby's First Amendment claim rests on two different grounds. First, he claims that his termination was in retaliation for his exercise of his right to free speech in using the Icebreaker. Second, he claims

that he was retaliated against for filing a notice of claim against Pierorazio.

 Before he was terminated, Kirby was a nontenured teacher.[4] Thus, the District could have refused to rehire him without any reason at all. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). A school district, however, violates the First Amendment, applicable to the states through the Fourteenth Amendment, if its decision not to rehire a nontenured teacher is in retaliation for constitutionally protected speech. *Id.* at 283–84, 97 S.Ct. 568; *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). To establish a prima facie case for First Amendment retaliation, a plaintiff must show:

(1) [H]is or her speech was constitutionally protected; (2) he or she suffered an adverse employment action; and (3) a causal connection exists between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination.

*Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir.2004) (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999)). The Court addresses each of the alleged First Amendment violations below.

#### 1. Classroom Speech

First, Kirby claims that he was terminated in retaliation for conducting the Icebreaker during his January 24th class. Thus, this Court must determine whether the Icebreaker constitutes "protected speech" within the meaning of the First

---

**4.** Kirby's hiring notice described his appointment as probationary. It stated that under Section 2573(1)(a) of the New York Education Law "[t]eachers and all other members of the teaching staff ... shall be appointed by the Board of Education upon recommendation of the Superintendent of Schools for a proba-

tionary period." Affirmation Supp. Mot. Summ. J., Ex. C, Offer of Employment, ECF No. 15 (alteration in original). According to that same section the probationary period shall be three years. N.Y. Educ. Law § 2573(1)(a).

Amendment and whether a reasonable jury could find that this exercise was the motivating factor behind Kirby's termination.

■ The Supreme Court consistently has held that teachers and students do not "shed their constitutional rights to freedom of speech . . . at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The Supreme Court has also recognized, however, that public schools may limit classroom speech to promote educational goals. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266–67, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Tinker*, 393 U.S. at 506–07, 89 S.Ct. 733.

■ In light of these competing concerns, school administrators may limit the content of school-sponsored speech so long as the limitations are "reasonably related to legitimate pedagogical concerns." [5] *Hazelwood*, 484 U.S. at 273, 108 S.Ct. 562. Whether the school's action is reasonable "will depend on, among other things, the age and sophistication of the students, the relationship between teaching method and valid educational objective, and the context and manner of the presentation." [6] *Ward v. Hickey*, 996 F.2d 448, 453 (1st Cir.1993); *see also Hazelwood*, 484 U.S. at 271, 108 S.Ct. 562. Indeed, school officials have broad discretion to restrict school-sponsored speech in order to further educational goals. This discretion includes not only the right to design curricula and select textbooks but also the right to impose regulations to ensure "that readers or listeners are not exposed to material that

5. Currently, there is a disagreement among federal courts of appeals on the issue of whether teachers' in-class speech is protected by the First Amendment. The debate is:

> Should teacher classroom speech be analyzed as the official speech of the teacher as a public employee [in which case the teacher's speech on matters of public concern may qualify for protection, *see Pickering v. Board of Ed. of Tp. High Sch. Dist. 205*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ], or under the more protective standard applicable to student speech [in which case school-sponsored teacher's speech may be restricted as long as they are related to a legitimate pedagogical concern, *see Hazelwood*, 484 U.S. 260, 108 S.Ct. 562]? The Court of Appeals for the Second Circuit is among the courts that have extended the Supreme Court's standard for student speech to teachers' instructional speech. *See, e.g., Silano*, 42 F.3d at 722–23.
>
> Other federal appellate courts analyzing teacher speech have applied the Supreme Courts's more restrictive standard for analyzing official speech of public employees. The Courts of Appeals for the Third, Fourth, and Fifth Circuits have determined that teacher instructional speech is not entitled to First Amendment protection because teachers do not speak on matters of public concern when they follow a school-mandated curriculum. *See Edwards v. Cal. Univ. of Penn.*, 156 F.3d 488, 491 (3d Cir.1998) (concluding "that a public university professor does not have a First Amendment right to decide what will be taught in the classroom").

*Kramer v. New York City Bd. of Educ.*, 715 F.Supp.2d 335, 353–54 (E.D.N.Y.2010) (some citations omitted); *see also* Karen C. Daly, *Balancing Act: Teacher's Classroom Speech and the First Amendment*, 30 J.L. & Educ. 1, 2 (2001).

6. *Hazelwood*, as applied to teachers, has been modified by two different circuits:

> The First Circuit weights "the age and sophistication of the students, the relationship between the teaching method and valid educational objectives, and the context and manner of the presentation" in determining whether a regulation governing teacher speech is reasonably related to legitimate pedagogical concerns. The First Circuit's modification, which flows naturally from earlier circuit precedents, has also been incorporated by the Second Circuit. *See Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 723 (2d Cir.1994).

Daly, *Balancing Act, supra* at 14.

may be inappropriate for their level of maturity." *Hazelwood,* 484 U.S. at 271, 108 S.Ct. 562.

Here, the Icebreaker took place inside Kirby's classroom and, according to him, was intended to make the students feel more comfortable while reviewing the male reproductive anatomy. Kirby Dep. 59:24–25. The male reproductive anatomy was part of the middle school health curriculum. Watkins Affirmation, Ex. 3, Middle School Health Curriculum, ECF. No. 24–1. For this reason, Kirby's activities were school-sponsored. *See Hazelwood,* 484 U.S. at 271, 108 S.Ct. 562 (characterizing as "school-sponsored" activities that are "designed to impart particular knowledge or skills to student[s]"); *see also Silano,* 42 F.3d at 723 (deeming "school-sponsored" a guest "lecture [that] took place in a traditional classroom setting and was designed to impart particular knowledge to the student participants").

Despite the fact that the Icebreaker was school-sponsored, Kirby departed from the District's curriculum when he implemented the exercise. The District's curriculum did not provide for Kirby's conducting an Icebreaker during that specific class or any other class. Middle School Health Curriculum; Watkins Affirmation, Ex. 3, Health Education: Content Outline, ECF No. 24–1. The Icebreaker also was not included on the lesson plan submitted by Kirby to the School. Watkins Affirmation. Ex. 4, Kirby Lesson Plan, ECF. No. 24–2.

Moreover, an Icebreaker, such as the one Kirby introduced in class, can be an insensitive exercise for seventh and eighth graders. Students of that age might not be maturely prepared either to draw the male reproductive system or to see their classmates drawing it on the blackboard. More sensitive students, like Amanda, might feel uncomfortable, while others might be tempted to make inappropriate and vulgar comments. The District has a reasonable pedagogical concern to keep Icebreaker-type exercises away from these still immature and impressionable children. Additionally, school classrooms are reserved for teaching, and the Icebreaker did not further the class's educational goals. By Kirby's own admission, the drawings were "really a little hard to tell what they were." Kirby Dep. 69:20–21. Looking at them "you wouldn't even know what was on the board. They were really just like scribbles...." *Id.* at 69:23–25. Thus, the Icebreaker was also unsuitable to review the male reproductive anatomy.

"The school board has a legitimate interest in ensuring that teachers devise and implement lesson plans in a way it considers effective and appropriate." *Kramer v. New York City Bd. of Educ.,* 715 F.Supp.2d 335, 357 (E.D.N.Y.2010) (holding that "[a]lthough the school's decision not to countenance Ms. Kramer's instructional method 'reflect[ed] its own restrictive views of the appropriate values to which ... students should be exposed,' that decision was the school's to make"); *see also Silano,* 42 F.3d 719 (holding that "given that the disputed film clip was entirely unnecessary to the subject matter of Silano's lecture, the school officials had a legitimate pedagogical purpose in restricting the display of photographs of bare-chested women in a tenth-grade classroom").

■ Here, the District reasonably determined that making the students draw the male reproductive system was inappropriate and unnecessary to Kirby's explanation of the male reproductive system. Hence, Kirby's use of the Icebreaker was not protected by the First Amendment. The fact that DiDomenico was allegedly doing the same type of exercise with her students does not mean that the District

cannot make the decision to restrict it.[7] The Icebreaker is not protected speech, and the School had the power to seek to banish it from the classroom. For this reason, this Court need not address the remaining elements of Kirby's retaliation claim. Summary judgment as to this aspect of Kirby's First Amendment claim is appropriate.

### 2. Notice of Claim

■ Second, Kirby claims that the Defendants violated his First Amendment right to petition the government for redress of grievances by terminating his employment in retaliation for his filing the April 2, 2007 Notice of Claim. To establish that the Defendants terminated him in retaliation for his filing the Notice of Claim, Kirby must first establish that his speech may be "fairly characterized as constituting speech on a matter of a public concern." *Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). A court determines whether an employee's speech involves a matter of public concern by examining the "content, form and context of a particular statement." *Id.* at 147, 103 S.Ct. 1684. When the alleged protected speech involves a prior lawsuit, complaint, or grievance, "[t]he fundamental question is whether the employee is seeking to vindicate personal interests or to bring to light a 'matter of political, social, or other concern to the community.'" *Rao v. New York Health & Hosps. Corp.*, 905 F.Supp. 1236, 1243 (S.D.N.Y.1995) (quoting *Connick*, 461 U.S. at 146, 103 S.Ct. 1684).

■ Once the employee establishes that he has spoken as a citizen on a matter of public concern, he must also establish that the speech was at least a "substantial" or "motivating" factor in the discharge. *Mount Healthy City Sch. Dist. Bd. of Educ.*, 429 U.S. at 287, 97 S.Ct. 568. If the employee fails to prove either this causation element or the public-concern element, his First–Amendment claim must fail.

■ Here, Pierorazio's alleged statements that Kirby acted in an "unprofessional, insensitive and unacceptable" manner, even if made with malice, cannot be said to be related to issues of serious interest to the community. Instead, Pierorazio's statements related only to Kirby as a school employee. Through his Notice of

---

7. DiDomenico's recommendation could be crucial, however, if Kirby were entitled to a notice requirement. For instance, in *Kramer*, the district court, while conceding that "[i]t can be assumed for the purposes of this case that the Board had the power to seek to banish [vulgar terms] from the classroom," it determined that "this conclusion does not decide the issues of due process and notice." 715 F.Supp.2d at 358.

Kirby's due process claims, however, are based on grounds different from those of a notice-vagueness due process claim. But even if Kirby were to make this claim, the fact is that he did not suffer any harm. After Ramirez's complaint, Pierorazio informed Kirby that he was recommending his termination. Through his teachers' union, Kirby requested a hearing before his termination. After a school board meeting, it was decided that Kirby *would not be terminated*. Thus, under the circumstances in which the Icebreaker occurred, not only was the District's conduct reasonable, but Kirby did not lose his job in conjunction with the Icebreaker.

Additionally, it is worth noting:

A first amendment notice requirement, though widely recognized, has not been universally adopted. The First Circuit is alone in adopting an explicit notice requirement under *Hazelwood* . . . .

[I]n *Silano*, [t]he Second Circuit has held that a requirement for "cleary-established rules and procedures . . . regulating the curriculum" is unnecessary and has indeed been rejected by the Supreme Court in *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 [108 S.Ct. 562, 98 L.Ed.2d 592] (1987). Daly, *Balancing Act, supra* at 19–24.

Claim, Kirby was only attempting to protect his own career and reputation. Grievances that relate solely to a public employee's individual employment situation are matters of private interest and therefore are not protected by the First Amendment. *See Bernheim v. Litt*, 79 F.3d 318, 324–25 (2d Cir.1996); *see also Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir.1991) (holding that medical resident's complaints regarding her treatment in residency program did not address matters of public concern); *Cliff v. Board of Sch. Comm'rs of Indianapolis*, 42 F.3d 403, 411 (7th Cir.1994) (holding that public school teacher's complaints about class size and disciplinary problems made in the context of personnel dispute with her employers were not a matter of public concern); *Rivera v. Community Sch. Dist. Nine*, Nos. 00 civ. 8208, 01 civ. 1976, 2002 WL 1461407 at *6 (S.D.N.Y. July 8, 2002) (holding that teacher's protests regarding disciplinary actions taken against her for allegedly helping students to cheat did not touch on a matter of public concern). Thus, Kirby's Notice of Claim is not constitutionally protected, and summary judgment as to his First Amendment claim must be granted.

## C. Fourteenth Amendment Claims

Kirby next claims that the Defendants violated the Due Process Clause of the Fourteenth Amendment in two different ways. First, he claims that they violated his right to procedural due process by failing to accord him a name-clearing hearing after publicly besmirching his reputation in concert with firing him from his employment. Second, Kirby claims that the Defendants violated his right to substantive due process by arbitrarily terminating him for attempting to defend himself from an attack by an assaultive student.

### 1. Procedural Due Process

■ To prevail on his procedural due process claim, Kirby must establish that he has suffered a deprivation of a liberty or property interest protected by the Constitution without being afforded adequate safeguards. "[I]n the context of an at-will government employee, a reasonably prompt, post-termination name-clearing hearing satisfies constitutional due process as long as the procedures afforded at such a hearing are sufficient to protect the employee's reputational and professional interests." *Segal v. City of New York*, 459 F.3d 207, 218 (2d Cir.2006).

### a. Property Interest

■ In the employment context, the employee seeking to establish a property interest must show "more than an unilateral expectation of it;" instead he must have a "legitimate claim of entitlement." *Board of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, a property interest will be established if the government employer "is barred ... from terminating the employment relationship *without cause*." *S & D Maint., Co. Inc. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988) (emphasis in original).

■ In the present case, it is undisputed that Kirby did not have a protected property interest in his employment. Kirby's hiring notice described his appointment as probationary. The New York Education Law provides that teaching staff is appointed "for a probationary period of three years." N.Y. Educ. Law § 2573(1)(a). Kirby had no basis to believe that he had a legitimate claim of entitlement to continued employment. Hence, Kirby did not have a protected property interest in his employment by the District.

### b. Liberty Interest

The Due Process Clause protects an individual from a government employer who disseminates false and defamatory information about the individual in connection with his termination. *See Goetz v. Windsor Cent. Sch. Dist.*, 698 F.2d 606, 610 (2d Cir.1983). While the liberty interest at stake is the employee's reputation, injury to one's reputation by itself is insufficient to invoke due process protections. *See Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Walentas v. Lipper*, 862 F.2d 414, 420 (2d Cir.1988). The employee's liberty interest is only implicated when the employer imposes such a stigma as to restrict the employee's ability to obtain future employment, in which case due process requires the government to provide the employee a name-clearing hearing. *See Baden v. Koch*, 799 F.2d 825, 830–31 (2d Cir.1986). This is commonly referred to as the "stigma plus" test. *See Valmonte v. Bane*, 18 F.3d 992, 999 (2d Cir. 1994).

To satisfy the "stigma-plus" test, Kirby must prove (1) that he was defamed; (2) that the defamation took place in the course of his termination; and (3) and that stigma foreclosed him from any future employment. *See Abramson v. Pataki*, 278 F.3d 93, 103 (2d Cir.2002); *O'Neill v. City of Auburn*, 23 F.3d 685, 691 (2d Cir.1994); *Baden*, 799 F.2d at 830–31. After showing each of the three elements of the "stigma-plus" test, Kirby must also show that the District failed to provide him a hearing consistent with his due process rights. That is, he must show harm caused by denial of a hearing. *See Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

Defamation is established if Pierorazio's statements were false and publicly stigmatized Kirby. *See Abramson*, 278 F.3d at 101–02. "[S]tigmatizing allegations ... include charges going to professional competence when the charges are sufficiently serious." *Donato v. Plainview–Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 632 (2d Cir.1996). Yet, "[a] statement that an employee poorly performed her duties or acted in an improper manner is insufficient to establish defamation." *LaForgia v. Davis*, No. 01 Civ. 7599, 2004 WL 2884524, at *8 (S.D.N.Y. Dec. 14, 2004) (quoting *O'Neill*, 23 F.3d at 692).

Here, Pierorazio issued a statement to the media in which he noted that Kirby's actions were "unprofessional" and "unacceptable." He stated that "[t]o just ask individuals to come and draw freestyle male anatomy is insensitive to the children." Kirtzman, *Yonkers Teacher Under Fire For Anatomy Assignment.* Pierorazio recommended that the District terminate Kirby. The District, however, instead decided not to terminate him. Kirby was only terminated at the end of the school year, after he was involved in a physical altercation with a student.

Pierorazio's statements referred unmistakenly to the Icebreaker. His criticism was confined to that single event, and the article was sufficiently precise for the readers to draw their own conclusions. Moreover, when Kirby was reinstated, another local newspaper followed up with an article stating:

> A district official told teacher Jeffrey Kirby that he would be put back into a classroom during the meeting yesterday.... Puleo said she was pleased with the reinstatement: "I'm happy to see he will be back in the classroom because the material that was handled was part of the curriculum," she said. Puleo said she did not know when or where Kirby would resume teaching

duties, The decision by the Yonkers school district to place the teacher on administrative leave stirred a national debate, largely on blogs, over what is and isn't appropriate in a health classroom. Most bloggers criticized the district, arguing that an anatomy lesson that includes drawing genitalia was appropriate for a sex education class.

Adely, *Yonkers Teacher Who Had Students Draw Penis Back In Class.* Pierorazio's statements, balanced by Puleo's statements, were not defamatory under the "stigma plus" test. They simply constitute a deprivation of a protected liberty interest.

 Moreover, even were this Court to conclude that Pierorazio's statements were actionable under the Fourteenth Amendment, the undisputed fact remains that the alleged defamation did not take place at the time of Kirby's termination. In *Paul v. Davis, III,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court stated:

> [It] was not thought sufficient to establish a claim under section 1983 and the Fourteenth Amendment that there simply be defamation by the state official; the defamation had to occur in the course of the termination of employment.

*Id.* at 713, 96 S.Ct. 1155. A temporal link between the defamation and the dismissal is necessary if the employee is to succeed upon a claim of liberty deprivation. *See Martz v. Incorporated Vill. of Valley Stream,* 22 F.3d 26, 32 (2d Cir.1994) (holding that in the absence of the necessary nexus between the defamation and the time of termination, defamatory statements in newspaper did not deprive attorney of liberty interest for due process

purposes); *Gentile v. Wallen,* 562 F.2d 193, 198 (2d Cir.1977) (stating that alleged defamatory statements made after plaintiff had been terminated from employment as public school teacher amounted to "simple defamation" which does not trigger due process rights). In the present case, there was approximately a six-month gap between Pierorazio's public statements and Kirby's termination.[8] The necessary temporal nexus between the defamation and the termination is lacking. For this reason, Kirby did not suffer a deprivation of his liberty. In any event, even were this Court to find that Pierorazio's statements implicated Kirby's liberty interest, Kirby's right to procedural due process was not violated. Kirby could have requested a name-clearing hearing through a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules. N.Y.C.P.L.R. 7801. *See Baden,* 799 F.2d at 830 ("In order to succeed on his liberty interest claim, Baden must also prove that Koch improperly refused to grant him a post-removal opportunity to refute the false charges that led to his removal."); *Federico v. Board of Educ.,* 955 F.Supp. 194, 202 (S.D.N.Y.1997) (dismissing former teacher's due process claims arising from alleged defamatory remarks by school officials because he failed to take advantage of the availability of an Article 78 proceeding), Indeed, "in [a] case involving an at-will government employee, the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim." *Segal,* 459 F.3d at 214. Because there are no non-conclusory allegations in Kirby's complaint suggesting that an Article 78 proceeding was either unavailable to Kirby or

---

**8.** Pierorazio's public statements were made on January 26, 2007, and Kirby was not terminated until August 18, 2007.

somehow insufficient to clear his name, his procedural due process claim must fail.

## 2. Substantive Due Process

■ Kirby next claims that the Defendants violated his right to substantive due process by terminating him for attempting to defend himself from an attack by an assaultive student. To prevail on his substantive due process claim, Kirby must: (1) establish the existence of some constitutionally-protected interest, *see O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir.2005); and (2) demonstrate that "the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience,'" *Benzman v. Whitman*, 523 F.3d 119, 126 (2d Cir.2008) (quoting *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir.2005)).

■ Kirby does not explicitly identify the constitutional interest at stake in his substantive due process claim. He alleges that "[b]y terminating [him] for allegedly attempting to defend himself from an attack by an assaultive student, the defendants violated the substantive due process clause of the Fourteenth Amendment in that such a basis was utterly arbitrary and capricious and, in fact, motivated by illegal retaliatory animus." Compl. ¶ 88. He argues that the Defendants made public defamatory comments about him and, shortly thereafter, terminated him, "purportedly on other grounds," without due process of law. Mem. L. Opp'n Mot. Summ. J. at 18. It seems that Kirby's procedural and substantive due process claims overlap significantly. The constitutionally-protected interest allegedly at stake in both due process claims—Kirby's liberty interest in his good name and reputation—is the same. For the reasons already discussed, however, the allegations in Kirby's complaint fall short of implicating a liberty interest. Similarly, as the Court ruled above when dismissing the procedural due process claim, Kirby had no constitutionally-protected property interest in the renewal of his employment contract with the District.

Hence, Kirby's substantive due process claim fails as a matter of law.

## D. Defamation Claim

As all Kirby's federal constitutional claims must fail, the Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, Kirby's state defamation claims are dismissed without prejudice.

## E. Qualified Immunity

■ "The qualified immunity doctrine shields governmental officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Poe v. Leonard*, 282 F.3d 123, 131 (2d Cir.2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see also Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir.2002). As the Court finds that Kirby has failed to establish a constitutional violation, the issue of Pierorazio's qualified immunity defense is moot. "Without an underlying constitutional violation, qualified immunity cannot attach." *Cathedral Church of The Intercessor v. Incorporated Vill. of Malverne*, 353 F.Supp.2d 375, 391 (E.D.N.Y.2005); *see Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("[I]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *Rivera v. Goord*, 253 F.Supp.2d 735, 757 (S.D.N.Y. 2003) (holding that, following a grant of

summary judgment, the court does "not address the issue of defendants' qualified immunity as the issue is moot").

## IV. CONCLUSION

For all of the above reasons, the Defendants' motion for summary judgment [ECF No. 14] is **ALLOWED**.

SO ORDERED.